NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12232

JAHMAL BRANGAN  vs.  COMMONWEALTH.


Suffolk.     May 2, 2017. - August 25, 2017.

Present:  Gants, C.J., Hines, Gaziano, Lowy, Budd, & Cypher, JJ.[1]


Bail.  Indigent.  Due Process of Law, Pretrial detainees.


Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on February 26, 2016.

The case was heard by Lenk, J.


Merritt Schnipper for the petitioner.
Amal Bala, Assistant District Attorney, for the
Commonwealth.
Shira Diner & Ryan M. Schiff, for Committee for Public
Counsel Services, amicus curiae, submitted a brief.


HINES, J.  The practice of releasing a defendant on bail

prior to trial has been part of Massachusetts law since its

beginnings as a colony.  See Commonwealth v. Baker, 343 Mass.

___

[1] Justice Hines participated in the deliberation on this
case and authored this opinion prior to her retirement.

162, 165 (1961).  The Body of Liberties (1641), the oldest known compilation of Massachusetts Colonial law, provided that:

> "18.  No mans person shall be restrained or imprisoned by any Authority whatsoever, before the law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behaviour in the meane time, unlesse it be in Crimes Capital, and Contempts in open Court, and in such cases where some expresse act of Court doth allow it."

See Baker, supra.

This statement, although nearly four centuries old, summarizes well the dual functions of bail.  On the one hand, release on bail preserves the liberty of the accused until he or she has been afforded the full measure of due process in a criminal trial.  "This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. . . .  Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning" (citation omitted).  Stack v. Boyle, 342 U.S. 1, 4 (1951).[2]  On the other

---

[2] See Stack v. Boyle, 342 U.S. 1, 7-8 (1951) (Jackson, J., concurring) ("The practice of admission to bail, as it has evolved in Anglo-American law, is not a device for keeping persons in jail upon mere accusation until it is found convenient to give them a trial.  On the contrary, the spirit of the procedure is to enable them to stay out of jail until a trial has found them guilty.  Without this conditional privilege, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in

hand, the giving of security serves to assure that the defendant will appear in court when called to do so. "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty." Id. Where, as in this case, the defendant is unable to give the necessary security for his appearance at trial because of his indigence, the purpose of bail is frustrated. The cost to the defendant is the loss of liberty and all the benefits that ordinarily would accrue to one awaiting a trial to determine his guilt or innocence.

The petitioner in this case, Jahmal Brangan, has been held at the Hampden County jail since January 17, 2014 -- more than three and one-half years -- because he has been unable to post bail in the amounts ordered by a Superior Court judge following his arrest and indictment for armed robbery while masked. In this appeal from a judgment of a single justice denying his petition for relief under G. L. c. 211, § 3, Brangan contends that the single justice's denial of his bail review request should be reversed because the Superior Court judge's bail order is unconstitutional. In particular, he argues that the bail order violated his right to due process because the judge failed to give adequate consideration to his financial resources, and

consulting counsel, searching for evidence and witnesses, and
preparing a defense").

set bail in an amount so far beyond his financial means that it resulted in his long-term detention pending resolution of his case.

In resolving the issues Brangan raises, we address the extent to which a judge must consider a criminal defendant's financial resources in setting bail, whether such a defendant is constitutionally entitled to an affordable bail, and the due process requirements that apply if the judge settles on a bail amount that is more than the defendant can pay, resulting in pretrial detention. For the reasons explained below, we conclude that in setting the amount of bail, whether under G. L. c. 276, § 57 or § 58, a judge[3] must consider a defendant's financial resources, but is not required to set bail in an amount the defendant can afford if other relevant considerations weigh more heavily than the defendant's ability to provide the necessary security for his appearance at trial. Where, based on the judge's consideration of all the circumstances, including the record of defaults and other factors relevant to the likelihood of the defendant's appearance for trial, neither alternative nonfinancial conditions nor a bail amount the defendant can afford will adequately assure his appearance for

---

[3] We use the term "judge" here as a shorthand reference to the entire range of judicial officers who are authorized to set bail under G. L. c. 276, §§ 57 and 58.

trial, the judge may set bail at a higher amount, but no higher than necessary to ensure the defendant's appearance for trial. We conclude further that where it appears that a defendant lacks the financial resources to post the amount of bail set, such that his indigency likely will result in a long-term pretrial detention,[4] the judge must provide written or orally recorded findings of fact and a statement of reasons for the bail decision. Based on the record before us, it does not appear that the judge here considered Brangan's financial resources in setting the bail. Therefore, we reverse the judgment of the single justice and remand this matter to the county court to direct the Superior Court judge to conduct a new bail hearing for Brangan as soon as possible in accord with the standards set out in this opinion.[5]

Background. On January 17, 2014, a man wearing a cap, scarf, and sunglasses robbed a bank in Springfield by passing a note to the bank teller demanding money and stating that he had a weapon. The teller handed over less than $1,000 to the

---

[4] We use the phrase "long-term pretrial detention" to mean detention for a period of time longer than the defendant might need to collect cash or collateral to post bail.

[5] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of Jahmal Brangan's appeal.

robber, who then fled.  The police arrested Brangan later that same day after finding his thumbprint on the robbery note.[6]

At the time, Brangan was on probation following a prison sentence of from eight to twelve years for rape of a child and related charges.[7]  Consequently, the probation department filed a notice of surrender, and when Brangan appeared on February 10, 2014, a judge of the Superior Court set bail at $20,000 cash or $200,000 surety based on the probation violation notice.  A grand jury subsequently indicted Brangan for armed robbery while masked under G. L. c. 265, § 17.  On March 10, 2014, at Brangan's arraignment on the robbery charge, the judge set bail in the amount of $50,000 cash or $500,000 surety.  Brangan remained in custody pending his trial.

In March, 2015, Brangan was tried and convicted on the armed robbery charge, after which the judge revoked his bail. Shortly after the entry of a guilty verdict, however, the trial judge declared a mistrial due to certain statements in the prosecutor's closing argument, and ordered Brangan to be

---

[6] At trial, Brangan did not contest that the thumbprint on the robbery note was his.

[7] In 2001, Brangan pleaded guilty to indictments charging three counts of rape of a child with force and four counts of indecent assault and battery on a child under the age of fourteen.  He was sentenced to from eight to twelve years in prison with five years of probation from and after the prison sentence.

retried;[8] the Commonwealth then appealed from the mistrial order. In the wake of the mistrial ruling, the judge held another bail hearing on April 10, 2015, and reinstated the original bail at $50,000 cash or $500,000 surety. Brangan unsuccessfully sought reduction of the bail in the Superior Court on July 15, 2015, and December 28, 2015.

In January, 2016, this court granted Brangan's application for direct appellate review of the Commonwealth's appeal from the trial judge's mistrial order. We subsequently held that the Commonwealth had no right to appeal from the mistrial order, leaving the armed robbery charge to stand for retrial. See Commonwealth v. Brangan, 475 Mass. 143, 148, 149 (2016) (Brangan I).[9]

_____

[8] Brangan orally moved for a mistrial at the end of the Commonwealth's closing argument. After the jury verdict, the trial judge accepted briefing and heard additional argument on the motion, which he ultimately granted.

[9] In Commonwealth v. Brangan, 475 Mass. 143 (2016) (Brangan I), Brangan also argued that a retrial of the armed robbery charge was barred by double jeopardy, but we concluded that this argument was not properly before us at that time because he had failed to timely appeal from the trial judge's ruling that double jeopardy would not bar a retrial. See id. at 148-149. We subsequently denied Brangan's petition for rehearing on that issue, without prejudice to his filing a motion to dismiss in the trial court and, if that motion was denied, seeking relief under G. L. c. 211, § 3. In November, 2016, Brangan filed a motion in the trial court to dismiss the armed robbery indictment on double jeopardy grounds and, after the judge denied that motion, filed a petition for relief in the county court, which also was denied. We allowed Brangan's appeal from

Meanwhile, Brangan followed a long and tortuous path to seek relief from his pretrial detention, filing four successive petitions in the county court pursuant to G. L. c. 211, § 3. The single justice denied Brangan's first petition without prejudice due his failure to file the record materials necessary to support his claims.

On considering Brangan's second petition, the single justice observed that the judge who had denied Brangan's motion for reduction of bail on December 28, 2015, had not made any oral or written findings or otherwise explained his decision. Accordingly, the single justice remanded the matter for a hearing to determine bail based on the factors set forth in G. L. c. 276, § 58. A judge of the Superior Court then conducted a bail hearing and issued a written decision retaining the original bail in the amount of $50,000 cash or $500,000 surety for the armed robbery charge and $20,000 cash or $200,000 surety for the probation violation.

After Brangan filed a third petition, the single justice remanded the matter to the Superior Court for consideration in light of this court's decision in Brangan I, which had been issued in the interim. A Superior Court judge then conducted

that denial to proceed in light of the special consideration we have given to double jeopardy claims. That appeal is scheduled to be heard by this court in the coming term.

another hearing and entered an order, dated September 19, 2016, that reduced the defendant's bail to $20,000 cash or $200,000 surety for the armed robbery indictment and retained the original bail in the amount of $20,000 cash or $200,000 surety for the probation violation.

Using a District Court form captioned "Reasons for Ordering Bail, G. L. c. 276, § 58," the judge checked off the following boxes as grounds for denying Brangan's release on personal recognizance without surety: the nature and circumstances of the offense charged; the potential penalty he faced; his history of mental illness; his record of convictions; the fact that his alleged acts involved "abuse" as defined in G. L. c. 209A, § 1; his history of orders issued against him under G. L. c. 209A; and his status of being on probation. In additional notes on the form, the judge stated that he had considered the matter in light of Brangan I in accord with the single justice's remand order and heard oral argument and reviewed the parties' submissions. As further grounds for the bail determination, he cited Brangan's prior sentence to State prison for multiple counts of rape of a child; the fact that he faced a substantial penalty if convicted of armed robbery; his history of c. 209A orders; and the fact that he was on probation at the time he allegedly committed the armed robbery. The judge also ordered that, if Brangan posted bail, his release would be on condition

that he wear a global positioning system (GPS) bracelet, observe a curfew, and stay away from the alleged victims.

Brangan then filed a fourth petition with the county court, arguing that the Superior Court judge had failed to give meaningful consideration to his inability to make the bail, to the equities in the case, and to his alternative proposal to post $5,000 cash bail and wear a GPS bracelet. Brangan further asked the single justice to conduct a bail hearing de novo. In support of this petition, Brangan filed an affidavit stating that the Superior Court judge had found him to be indigent when he was first charged in January, 2014; that he had been represented at trial and on appeal by court-appointed attorneys; that his financial condition was far worse than when he was first charged, since he had been incarcerated and unable to work; and that there was no way he could hope to post the $40,000 bail that the judge had set.

The single justice denied the fourth petition, ruling that Brangan's inability to make a particular bail amount did not render the Superior Court judge's order a functional denial of bail, and did not establish, without more, that Brangan was entitled to extraordinary relief under G. L. c. 211, § 3. The defendant appealed from the single justice's order pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001). This court ordered the appeal to proceed with briefing and argument. We

noted that filing a petition pursuant to G. L. c. 211, § 3, is the proper means for seeking relief from bail determinations in the Superior Court, see Commesso v. Commonwealth, 369 Mass. 368, 372 (1975), and that Brangan had no other means of obtaining adequate appellate review.

Discussion.  1.  Standard of review.  When a party appeals from an adverse judgment by the single justice under G. L. c. 211, § 3, we review the single justice's order for clear error of law or abuse of discretion.  See Commonwealth v. Chism, 476 Mass. 171, 176 (2017); Leo v. Commonwealth, 442 Mass. 1025, 1026 (2004).  We must also consider the propriety of the Superior Court judge's underlying bail order.  See Chism, 476 Mass. at 176-179 (evaluating underlying trial court order in appeal from single justice judgment concerning that order).  In reviewing both the single justice's judgment and the bail judge's order, we must consider the legal rights at issue and independently determine and apply the law, without deference to their respective legal rulings.  See The Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 603 (2000).

2.  Consideration of criminal defendant's financial resources in setting bail.  The parties dispute whether the Superior Court judge was obliged to consider Brangan's financial resources in setting bail.  Based on our review of the applicable statute and relevant decisions, we are persuaded that

a judge must consider a criminal defendant's financial resources in setting bail.

We have held that G. L. c. 276, § 57, rather than § 58, is the applicable statute governing bail proceedings in the Superior Court. See Querubin v. Commonwealth, 440 Mass. 108, 111 (2003); Serna v. Commonwealth, 437 Mass. 1003, 1003 (2002). We reached that conclusion because § 57 specifically authorizes judges of the Superior Court, among others, to admit a prisoner to bail, whereas § 58 does not.[10] See Serna, 437 Mass. at 1003. And as the Commonwealth pointed out at oral argument, unlike § 58, § 57 does not specifically reference a defendant's financial resources as a factor to be considered in setting bail.[11,12]

---

[10] General Laws c. 276, § 57, applies to "[a] justice of the supreme judicial or superior court, a clerk of courts or the clerk of the superior court for criminal business in the county of Suffolk, a standing or special commissioner appointed by either of said courts or, in the county of Suffolk, by the sheriff of said county with the approval of the superior court, a justice or clerk of a district court, [or] a master in chancery." General Laws c. 276, § 58, applies to "[a] justice or a clerk or assistant clerk of the district court, a bail commissioner or master in chancery."

[11] Although § 57 contains a list of factors to be considered in setting bail that is similar to the list in § 58, § 57 omits a defendant's financial resources as a factor, and it only references these factors in the context of a case where a defendant has been charged with certain acts involving abuse, domestic violence, assault, or violations of abuse prevention orders. See G. L. c. 276, § 57, second par.

A Superior Court judge, however, must still consider a defendant's financial resources when setting bail as a matter of common law.  We have said that, under § 57,

> "the factors that a judge is to consider when conducting a bail hearing are '(1) the nature and circumstances of the offense charged, (2) the accused's family ties, (3) his financial resources, (4) his length of residence in the community, (5) his character and mental condition, (6) his record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or (7) any failure to appear at any court proceedings'" (emphasis added).

Commonwealth v. Torres, 441 Mass. 499, 504 (2004), quoting Querubin, 440 Mass. at 115 n.6.  These are common-law historical

---

[12] As noted above, the Superior Court judge set Brangan's bail using a District Court form that referenced G. L. c. 276, § 58, and in its briefs for the single justice and for us, the Commonwealth argued that the Superior Court judge properly exercised his discretion by considering the necessary factors under § 58.  Thus, the Commonwealth arguably waived its § 57 argument by omitting it from its briefs for the single justice and for us.  See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).  We nevertheless address this argument in light of the limitations on briefing in proceedings under G. L. c. 211, § 3, and S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001), and the principle that a reviewing court may affirm a lower court ruling on any ground supported by the record, including legal theories not argued by the Commonwealth or considered by the judge in the proceedings below.  See Clair v. Clair, 464 Mass. 205, 214 (2013); Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).  We also consider the Commonwealth's argument because it presents "an important public question whose resolution will affect more persons than the parties to the case . . . [and which] is primarily a matter of statutory interpretation, not dependent on the facts of the particular case."  Department of Community Affairs v. Massachusetts State College Bldg. Auth., 378 Mass. 418, 424 (1979), quoting Lahey Clinic Found., Inc. v. Health Facilities Appeals Bd., 376 Mass. 359, 372 (1978).

factors for bail, see Querubin, 440 Mass. at 115 n.6, 120, which must be reviewed by a Superior Court judge in setting bail in all cases, even though § 57 does not explicitly list them all.[13]

In addition to the common law, constitutional principles also mandate consideration of a defendant's financial resources in setting bail. Both the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights prohibit excessive bail.[14] The United States Supreme Court has said that bail is "excessive" when it is "set at a figure higher than an amount reasonably calculated to fulfill" the purpose of assuring the presence of the accused at future proceedings. Stack, 342 U.S. at 5. To be reasonable, that calculation must be based on the individual character and circumstances of each defendant, including his or her financial circumstances. "[T]he fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant" (emphasis added).

---

[13] Because these "common-law considerations are among the same as those contained in G. L. c. 276, § 58," Querubin, 440 Mass. at 120, it is not surprising that Superior Court judges sometimes rely on § 58 in their bail orders, as the bail judge did in this case, even though they are proceeding under § 57.

[14] The United States Supreme Court has said that the restrictions in the Eighth Amendment apply to the States by virtue of the Fourteenth Amendment to the United States Constitution, see Hall v. Florida, 134 S. Ct. 1986, 1992 (2014), although the Court has not specifically so held in a case concerning excessive bail.

Id. at 5. These standards, which include "the financial ability of the defendant to give bail," "are to be applied in each case to each defendant." Id. at 5 & n.3, citing former Fed. R. Crim. P. 46(c). "Each defendant stands before the bar of justice as an individual. . . . The question when application for bail is made relates to each one's trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance." Id. at 9 (Jackson, J., concurring).

Each eligible defendant's right to an individualized bail determination that takes his or her financial resources into account is further supported by the constitutional principles of due process and equal protection. For this reason, courts have opined that it is unconstitutional to use master bail bond schedules to set the same bail amount for everyone for a particular offense, without regard to individual financial circumstances or alternative conditions of release. See, e.g., Pugh v. Rainwater, 572 F.2d 1053, 1057 (5th Cir. 1978) ("The incarceration of those who cannot" meet master bond schedule, "without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements"); Walker vs. Calhoun, U.S. Dist. Ct., C.A. No. 4:15-CV-0170-HLM, slip op. at 49 (N.D. Ga. Jan. 28, 2016), vacated on other grounds by Walker v. Calhoun, 682 Fed. Appx. 721 (2017) ("Any bail or bond scheme that mandates payment of

pre-fixed amounts for different offenses to obtain pretrial release, without any consideration of indigence or other factors, violates the Equal Protection Clause" [citing cases]).

A bail that is set without any regard to whether a defendant is a pauper or a plutocrat runs the risk of being excessive and unfair. A $250 cash bail will have little impact on the well-to-do, for whom it is less than the cost of a night's stay in a downtown Boston hotel, but it will probably result in detention for a homeless person whose entire earthly belongings can be carried in a cart. "What would be a reasonable bail in the case of one defendant may be excessive in the case of another." Bennett v. United States, 36 F.2d 475, 477 (5th Cir. 1929). In setting bail, a judge must always keep in mind the question once posed by United States Supreme Court Justice William O. Douglas: "Can an indigent be denied freedom, where a wealthy man would not, because he does not happen to have enough property to pledge for his freedom? [citation omitted]" Pugh v. Rainwater, 557 F.2d 1189, 1195 (5th Cir. 1977), vacated on rehearing en banc, 572 F.2d 1053 (5th Cir. 1978).

In this case, nothing in the bail judge's September 19, 2016, order or in the record establishes that he considered Brangan's financial resources in setting bail at $40,000. We cannot say for sure whether he did or did not. But as we

explain below, the judge must address this issue in writing or orally on the record in every case where bail is set in an amount that is likely to result in a defendant's long-term pretrial detention because he or she cannot afford it.

3. Whether bail must be affordable. The arguments that Brangan and the amicus present also raise the question whether unaffordable bail is unconstitutional per se. We conclude that it is not, but in doing so, we recognize that the imposition of unaffordable bail is subject to certain due process requirements.

We previously have stated that an "amount of bail [is] not excessive merely because [a defendant] could not post it." Leo v. Commonwealth, 442 Mass. at 1026. Other courts have similarly concluded that a defendant is not constitutionally entitled to a bail that is affordable. See, e.g., United States v. McConnell, 842 F.2d 105, 107 (5th Cir. 1988) ("a bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement"); White v. Wilson, 399 F.2d 596, 598 (9th Cir. 1968) ("The mere fact that petitioner may not have been able to pay the bail does not make it excessive."); Hodgdon v. United States, 365 F.2d 679, 687 (8th Cir. 1966), cert. denied, 385 U.S. 1029 (1967) (same); State v. Pratt, 2017 VT 9, ¶15 (2017) ("the Constitution does not require that a defendant have the ability to pay the

required bail if it is otherwise reasonable").  Even Justice Jackson, in arguing for the importance of an individualized bail determination in Stack, qualified his point by noting that "[t]his is not to say that every defendant is entitled to such bail as he can provide."  Stack, 342 U.S. at 10 (Jackson, J., concurring).  Although the judge must take a defendant's financial resources into account in setting bail, that is only one of the factors to be considered, and it should not override all the others.  Bail that is beyond a defendant's reach is not prohibited.  Where, based on the judge's consideration of all the relevant circumstances, neither alternative nonfinancial conditions nor an amount the defendant can afford will adequately assure his appearance for trial, it is permissible to set bail at a higher amount, but no higher than necessary to ensure the defendant's appearance.

This conclusion is also supported by our previous decisions upholding the constitutionality of pretrial detention in Mendonza v. Commonwealth, 423 Mass. 771 (1996), and Querubin, 440 Mass. 108.  In Mendonza, which upheld pretrial detention of a demonstrably dangerous defendant where it is necessary to ensure the safety of other persons or the community pursuant to G. L. c. 276, § 58A, we noted that although the statute precludes a judge "from imposing a financial condition that results in pretrial detention in order to assure the safety of

other persons, . . . financial conditions having that effect are not precluded for the purpose of assuring [the defendant's] appearance before the court." Mendonza, 423 Mass. at 774.[15] In Querubin, we upheld the constitutionality of pretrial detention without bail of a defendant who poses a serious flight risk to ensure that they will appear at future court proceedings. See Querubin, 440 Mass. at 116, 118-119. If it is permissible within the bounds of due process for a judge to hold a defendant without any bail to assure his future appearance before the court, as we held in Querubin, then it must also be permissible

---

[15] General Laws c. 276, § 58A (3), provides that "[a] justice may not impose a financial condition under this section" -- i.e., due to the defendant's dangerousness -- "that results in the pretrial detention of the person," but "[n]othing in this section shall be interpreted as limiting the imposition of a financial condition upon the person to reasonably assure his appearance before the courts." Brangan cites language in the Federal Bail Reform Act, 18 U.S.C. § 3142(c)(2) (2012), which simply states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person," without the qualification that appears in G. L. c. 276, § 58A (3). But the Senate report accompanying the Federal Bail Reform Act makes it clear that "[t]he purpose of this provision is to preclude the sub rosa use of money bond to detain dangerous defendants," and that "its application does not necessarily require the release of a person who says he is unable to meet a financial condition of release which the judge has determined is the only form of conditional release that will assure the person's future appearance." Sen. Rep. No. 98-225, 98th Cong., 2d Sess. (1984), reprinted in U.S. Code Cong. & Admin. News (1984) 3182, 3199. In light of this commentary, Federal courts have rejected the argument that this statutory provision means that a defendant's "relative penury entitles him to a lower bond." United States v. Mantecon-Zayas, 949 F.2d 548, 550 (1st Cir. 1991).

for a judge to hold a defendant on an unaffordable bail for that same purpose.[16]

But having concluded that a defendant is not constitutionally entitled to an affordable bail, it is important for us to be clear about the strict standards that due process

_____

[16] Brangan and the amicus cite decisions by this court and by the United States Supreme Court recognizing the general principle that the constitutional rights of equal protection and due process prohibit punishment of indigent persons solely for their poverty, unless there is no other adequate alternative to serve the State's interests in punishment and deterrence.  See, e.g., Bearden v. Georgia, 461 U.S. 660, 672-673 (1983) (imprisonment of probationer for failure to pay fine or restitution, "simply because, through no fault of his own, he cannot pay . . . would be contrary to the fundamental fairness required by the Fourteenth Amendment"); Commonwealth v. Henry, 475 Mass. 117, 122 (2016) ("imposing restitution that the defendant will be unable to pay violates the fundamental principle that a criminal defendant should not face additional punishment solely because of his or her poverty"); Commonwealth v. Gomes, 407 Mass. 206, 212 (1990), quoting Tate v. Short, 401 U.S. 395, 398 (1971) ("Generally, 'the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full'").  Pretrial detention, however, is not a form of punishment; it is regulatory in character, because it is intended to serve the governmental goals of protecting the public and assuring the presence of the accused at future proceedings.  See United States v. Salerno, 481 U.S. 739, 746-747 (1987); Aime v. Commonwealth, 414 Mass. 667, 677-678 (1993), citing Bell v. Wolfish, 441 U.S. 520, 535-537 (1979).  Holding a defendant on bail beyond his or her ability to pay is not, therefore, tantamount to punishing the defendant for his or her poverty.  See Mantecon-Zayas, 949 F.2d at 550, quoting United States v. Jessup, 757 F.2d 378, 388-389 (1st Cir. 1985) ("when faced with a risk of flight, judge is entitled to set bail at level he finds reasonably necessary; if defendant cannot afford bail, and must be detained pending trial, it is 'not because he cannot raise the money, but because without the money the risk of flight is too great'").

imposes when a defendant is held on an unaffordable bail.  We turn to that subject next.

4.  Due process requirements.  We begin by reviewing basic constitutional due process principles and our previous decisions applying these principles to pretrial detention.  The Fourteenth Amendment to the United States Constitution and arts. 1, 10, and 12 of the Massachusetts Declaration of Rights establish a fundamental right to liberty and freedom from physical restraint that cannot be curtailed without due process of law.  See Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228, 234 (2004); Querubin, 440 Mass. at 112; Mendonza, 423 Mass. at 778-779; Aime v. Commonwealth, 414 Mass. 667, 676-677 (1993).  Pretrial detention encroaches on that fundamental right insofar as it subjects a defendant to governmental restraint without having received the full measure of due process to which the defendant is entitled before he or she can be punished under the criminal law.  See Mendonza, 423 Mass. at 778-779.

In our previous decisions analyzing the constitutionality of pretrial detention, we have considered two aspects of due process -- substantive and procedural -- following Supreme Court precedents.  Under the test of substantive due process, "[w]here a right deemed to be 'fundamental' is involved, courts 'must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the

challenged regulation,' Moore v. East Cleveland, 431 U.S. 494, 499 (1977), and typically will uphold only those statutes that are narrowly tailored to further a legitimate and compelling governmental interest." Querubin, 440 Mass. at 112, quoting Aime, 414 Mass. at 673. "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). This requirement traditionally has been referred to as 'procedural' due process." Querubin, 440 Mass. at 116, quoting United States v. Salerno, 481 U.S. 739, 746 (1987).

Applying these standards, we have held that in certain limited circumstances a judge may properly detain a defendant before trial, where such detention is demonstrably necessary to ensure the defendant's appearance at future proceedings or to protect public safety. In Querubin, we affirmed a Superior Court judge's order denying bail under G. L. c. 276, § 57, to a defendant indicted for drug trafficking who plainly posed a serious flight risk: he had fled from police who sought to arrest him on a default warrant; had used an alias; had failed to appear in court in response to a summons; and had been apprehended by border patrol officers as he attempted to flee into Mexico. See Querubin, 440 Mass. at 109-110, 119. After reviewing the statutory procedures and common-law standards for

determining whether a defendant should be held without bail because he is likely to flee, we concluded that these procedures are "narrowly tailored to the State's legitimate and compelling interest in assuring the defendant's presence at trial," id. at 116, and that the hearing requirement afforded the defendant sufficient procedural protection, see id. at 117-119.

In Mendonza, we upheld the statutory scheme in G. L. c. 276, § 58A, which was enacted in 1994 to authorize temporary preventive pretrial detention of a defendant charged with certain violent or dangerous crimes due to his or her dangerousness. We noted that the statute's application is limited to cases where probable cause has been found to charge a defendant with certain serious offenses (such as crimes involving force, the risk of force, abuse, or violation of domestic violence protection orders); that the judge must conduct an evidentiary hearing at which the defendant has the right to testify, present evidence, and cross-examine witnesses; and that the judge may order pretrial detention only where the judge finds, based on based on clear and convincing evidence, that no conditions of release will reasonably assure the safety of any other person or the community. See Mendonza, 423 Mass. at 774, 780-781, 792; G. L. c. 276, § 58A (1), (3), and (4). We also pointed out that these safeguards were similar to those contained in the Federal Bail Reform Act of 1984, 18 U.S.C.

§ 3142, on which § 58A was modeled, and we relied extensively on the Supreme Court's decision in Salerno, 481 U.S. 739, which upheld a similar preventive detention scheme in that statute. See Mendonza, 423 Mass. at 780-781, 786-788.

Conversely, in Aime we invalidated earlier 1992 amendments to the bail statutes that would have allowed a judge to detain a defendant on high bail due to his or her perceived dangerousness, without adequate due process safeguards to ensure the accuracy of that determination. In that case, a District Court judge ordered an alleged drug dealer to be held on bail of $100,000 cash or $1 million surety because he was a danger to the community. See Aime, 414 Mass. at 669 & n.2. The judge relied on amendments to G. L. c. 276, § 58, that authorized judicial officers, in setting bail, to take into account the "seriousness of the danger to any person or the community that would be posed by the prisoner's release." Aime, supra at 671, quoting St. 1992, c. 201, § 4. We determined that these amendments did not meet the due process requirements of the Fourteenth Amendment because they "essentially grant[ed] the judicial officer unbridled discretion to determine whether an arrested individual is dangerous" and lacked "procedures 'designed to further the accuracy' of the judicial officer's determination." Aime, supra at 682, quoting Salerno, 481 U.S. at 751. See Aime, supra at 683.

In sum, "in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  Aime, 414 Mass. at 677, quoting Foucha v. Louisiana, 504 U.S. 71, 83 (1992).  Although the Federal Constitution and the Massachusetts Declaration of Rights do not prohibit pretrial detention, they permit it only "in carefully circumscribed circumstances and subject to quite demanding procedures."  Mendonza, 423 Mass. at 790.

With this background, we now turn to the present case.  In her judgment denying Brangan's most recent petition, the single justice ruled:  "That [Brangan] is unable to pay a particular amount of bail does not, contrary to [his] assertion, necessarily render it a functional denial of bail.  Nor does it establish, without more, that [he] is entitled to the extraordinary relief available under G. L. c. 211, § 3."  We disagree.

It is certainly true that "a defendant does not have a constitutional right to be released on bail prior to trial." Querubin, 440 Mass. at 112.  Still less does a defendant have a constitutional right to an affordable bail, as we discussed above.  But where a judge sets bail in an amount so far beyond a defendant's ability to pay that it is likely to result in long-term pretrial detention, it is the functional equivalent of an order for pretrial detention, and the judge's decision must be

evaluated in light of the same due process requirements applicable to such a deprivation of liberty.  See Aime, 414 Mass. at 676.[17]

Here, the record shows that Brangan is indigent and that bail has been set in an amount that is unattainable for him, resulting in his long-term pretrial detention.  Accordingly, we must analyze the bail judge's order and the record below in light of the requirements of due process applicable to pretrial detention.  Based on that review, we discern three particular areas of concern, for which we articulate three corresponding due process standards applicable to such cases.

First, a judge may not consider a defendant's alleged dangerousness in setting the amount of bail, although a defendant's dangerousness may be considered as a factor in setting other conditions of release.  Using unattainable bail to detain a defendant because he is dangerous is improper.  If the

---

[17] In Aime, the Commonwealth argued that the 1992 amendments allowing a judge to consider a defendant's dangerousness in setting a bail amount "merely added an additional, unremarkable factor to the bail statute" and did not enact a preventive detention scheme.  Aime, 414 Mass. at 676.  We rejected that argument.  We reasoned that, even though the amendments did "not explicitly provide for preventive detention," they effectively sought "to accomplish this goal through the use of the surety which an arrestee must post in order to be admitted to bail," by "setting unattainable surety in order to secure the detention of an arrestee."  Id. at 676 & n.12.  We therefore concluded that "[t]he amendments infringe[d] on the individual interest in freedom from detention" and must be analyzed on that basis.  Id. at 676.

Commonwealth wishes to have a defendant held pretrial because he poses a danger to another person or the community, it must proceed under G. L. c. 276, § 58A, and comply with that statute's procedural requirements.

We emphasize this point because the Commonwealth's briefs submitted to us and to the single justice repeatedly present arguments concerning Brangan's dangerousness, stating for example that he "fails to acknowledge the danger that he poses to the community," "created a public safety risk," "endangered the public," and "poses a threat to public safety" and "a security risk," while citing his rape convictions, the abuse prevention orders issued against him, and his alleged failure to register as a sex offender. These would be proper arguments if the Commonwealth had sought to detain Brangan under § 58A, but it never did so. The use of dangerousness as a discretionary factor in setting bail without the kind of procedural safeguards found in § 58A and in the Federal Bail Reform Act is precisely what Aime prohibits. See Aime, 414 Mass. at 680 ("State may not enact detention schemes without providing safeguards similar to those which Congress incorporated into the Bail Reform Act"); see also Mendonza, 423 Mass. at 774 (under G. L. c. 276, § 58A, "judge is precluded from imposing a financial condition that results in pretrial detention in order to assure the safety of other persons," which "should end any tendency to require high

bail as a device for effecting preventive detention").  We recognize the importance of protecting public safety by providing "preliminary relief for the government in incapacitating persons who pose a particular danger to the public."  Id. at 781.  But this relief must be obtained through the constitutionally appropriate process in § 58A.

We might be less concerned about the Commonwealth's dangerousness arguments if it were clear from the record that the bail judge's determination was based solely on Brangan's risk of flight.  But the bail order does not specifically weigh that risk.  We also note that the evidence that Brangan posed a serious flight risk seems relatively equivocal, taking into account his voluntary appearance when the police sought to talk with him after the robbery and the evidence that he never missed a court appearance.

Second, where, based on a defendant's credible representations and any other evidence before the judge, it appears that the defendant lacks the financial resources to post the amount of bail set by the judge, such that it will likely result in the defendant's long-term pretrial detention, the judge must provide findings of fact and a statement of reasons for the bail decision, either in writing or orally on the

record.[18]  The statement must confirm the judge's consideration

of the defendant's financial resources,[19] explain how the bail

amount was calculated, and state why, notwithstanding the fact

that the bail amount will likely result in the defendant's

detention,  the defendant's risk of flight is so great that no

alternative, less restrictive financial or nonfinancial

conditions will suffice to assure his or her presence at future

court proceedings.[20]

---

[18] Judges in the District Court, Boston Municipal Court, and
Juvenile Court routinely make findings, based on the factors in
G. L. c. 276, § 58, in support of their bail decisions.  Thus, a
requirement of written or oral findings on the record does not
impose an undue hardship in the setting of bail.  In setting
bail under G. L. c. 276, § 57, a judge may rely on the factors
set forth in G. L. c. 276, § 58, to demonstrate that a
defendant's right to due process has been given appropriate
consideration.  Although the District Court form, captioned
"Reasons for Ordering Bail, G. L. c. 276, § 58," may be useful
in making the findings required in this opinion, we caution that
further elaboration of the findings may be prudent where the
bail is likely to result in a defendant's long-term detention.

[19] As the amicus suggests, consideration of a defendant's
financial resources may be facilitated by reviewing the report
prepared by the probation department to determine whether a
defendant qualifies as indigent for court-appointed counsel.
See Mass. R. Crim. P. 7 (a) (3) and 7 (b) (2), as appearing in
461 Mass. 1501 (2012); S.J.C. Rule 3:10, § 5 (a), as appearing
in 475 Mass. 1301 (2016); G. L. c. 211D, § 2A (a)-(c).

[20] For example, where a judge imposes a bail amount that is
greater than what a defendant represents that he can pay, that
amount might be justified where the judge states on the record
that she has considered alternative nonfinancial conditions and
a lesser bail amount, but has concluded that they would not be
sufficient to assure the defendant's appearance at future
proceedings given the defendant's record of defaults or other

We borrow these requirements, with some modifications, from United States v. Mantecon-Zayas, 949 F.2d 548 (1st Cir. 1991), which addressed a comparable situation where the bail imposed by the Federal District Court judge exceeded the defendant's means, resulting in his pretrial detention. In that case, the United States Court of Appeals for the First Circuit concluded that the District Court judge could properly insist on a financial condition that the defendant could not afford to pay, resulting in his detention, provided that the judge complied with the procedural requirements for a valid detention order, including written findings of fact and a written statement of reasons for determining that the financial condition imposed was an indispensable condition for release. See id. at 550-551. In particular, the First Circuit found the District Court judge's bail order to be deficient because it gave "no indication of the reasons underlying the district court's calculation of the bond," and did not explain "why the district court thought a $200,000 bond was necessary in the face of the defendant's representation that he could not afford such a bond." Id. at 551.

---

indications that the defendant poses a flight risk. The judge also is not bound by a defendant's representation as to what bail he can reasonably afford, and may indicate that she is not convinced, based on the record, that the defendant cannot post bail in the amount set by the judge.

Although the rulings in Mantecon-Zayas were based on the language and legislative history of the Federal Bail Reform Act, the same requirements are also dictated by the constitutional demands of due process.  A statement of findings and reasons, either in writing or orally on the record, is a minimum requirement where a defendant faces a loss of liberty.[21]  See Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016) ("Due process requires that a judge issue a written statement regarding the evidence relied upon and the reasons for revoking probation"); id. at 484 n.8 (due process requirement is satisfied where judge makes oral statements on record and transcript is available); Doucette v. Massachusetts Parole Bd., 86 Mass. App. Ct. 531, 539 (2014), quoting Commonwealth v. Durling, 407 Mass. 108, 113 (1990) ("The minimum requirements of due process include 'a written statement by the factfinders as to the evidence relied on and reasons for revoking . . . parole'").  Requiring a particularized statement as to why no less restrictive condition will suffice to assure the

---

[21] We recognize the practical difficulty in determining whether a particular bail amount will result in the defendant's pretrial detention and whether, in that case, the judge must make findings in accordance with due process justifying the bail order.  Therefore, to ensure that findings are made, the better practice is to make findings in every case where the defendant is not released on personal recognizance and the defendant represents in good faith to the judge that he or she is unable to make the bail set by the judge.

defendant's presence at future court proceedings is appropriate in light of the applicable standard of substantive due process, that the procedure be "narrowly tailored to the State's legitimate and compelling interest in assuring the defendant's presence at trial." Querubin, 440 Mass. at 116. It also is important because holding a defendant on an unaffordable bail amount defeats bail's purpose of securing pretrial liberty.[22]

Measured against these requirements, the bail order here is deficient. The order lists the factors the judge considered in ordering bail and cites Brangan's previous sentence for rape of a child, the potential penalty he faced if convicted of armed

___

[22] There are also practical reasons why it is sensible to avoid detaining a defendant on unaffordable bail unless it is truly necessary. Pretrial detention disrupts a defendant's employment and family relationships, with often tragic consequences. See Pinto, The Bail Trap, The New York Times Magazine (Aug. 13, 2015). Pretrial detention disproportionately affects ethnic and racial minority groups. See Jones & Forman, Exploring the Potential for Pretrial Innovation in Massachusetts, The Massachusetts Institute for a New Commonwealth, Justice Reinvestment Policy Brief Series, at 3-4, 5 (Sept. 2015); Bail Fail: Why the U.S. Should End the Practice of Using Money for Bail, Justice Policy Institute, at 15-16 (Sept. 2012) (Bail Fail). And funds expended on pretrial detention might be better spent on treatment and supervision. See Jones & Forman, supra at 5-6. Research indicates that alternatives to cash bail and secured bonds, such as unsecured bonds, pretrial supervision, and court notification systems, may be just as effective in assuring that a defendant appears at future court proceedings. See Jones, Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option, Pretrial Justice Institute (Oct. 2013); Bail Fail, supra at 27-35; Moving Beyond Money: A Primer on Bail Reform, Harvard Law School Criminal Justice Policy Program, at 14-18 (Oct. 2016).

robbery, the previous orders issued against him under G. L. c. 209A, and the fact that he was on probation when he allegedly committed the robbery. Although these are appropriate matters to take into account in setting bail, the order does not evidence any consideration of Brangan's financial resources, and does not explain how the judge calculated the bail amount, how Brangan's criminal history demonstrated that he posed a serious flight risk, or why that risk was so great that it necessitated a bail amount beyond his means. Furthermore, the order does not explain why the judge rejected Brangan's alternative proposal that he be released on $5,000 cash with the condition that he wear a GPS tracking bracelet.

Third, when a bail order comes before a judge for reconsideration or review and a defendant has been detained due to his inability to post bail, the judge must consider the length of the defendant's pretrial detention and the equities of the case. In upholding pretrial detention of a defendant to assure his or her future presence in court or safeguard other persons or the community, we have emphasized the temporary nature of this detention. See Querubin, 440 Mass. at 118 ("If a defendant is held pending trial, the consequences to him, although significant, are temporary"); Mendonza, 423 Mass. at 781, 790 ("the conclusion of the trial itself provides an inevitable end point to the State's preventive authority," and

detention under G. L. c. 276, § 58A, is "temporary and provisional"). That justification for pretrial detention erodes the longer a defendant has been held.

In this case, Brangan has been held for more than three and one-half years. In their briefs the parties exchange accusations as to the underlying reasons for the delay in bringing Brangan to trial, and we do not purport to assess where the fault, if any, lies.[23] We only note that the delay is an additional factor to be considered in determining whether Brangan's continued pretrial detention is justified.

Conclusion. For the reasons stated above, we reverse the order of the single justice and remand this case to the county court for entry of an order directing the Superior Court judge to conduct a new bail hearing for Brangan as soon as possible in accord with the standards set out in this opinion.

---

[23] Much of the delay appears to have resulted from the mistrial that the trial judge ordered based on the prosecutor's closing statement, and by the Commonwealth's interlocutory appeal from that order, which we rejected in Brangan I on the ground that the judge's order was not appealable. Brangan I, 475 Mass. at 145-146, 148, 149. In the context of determining whether a defendant's speedy trial rights have been violated, the United States Supreme Court has observed that "an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay," but "a delay resulting from an appeal would weigh heavily against the Government if the issue were clearly tangential or frivolous." United States v. Loud Hawk, 474 U.S. 302, 315-316 (1986). Brangan's pending appeal on double jeopardy grounds, which we declined to consider as part of Brangan I, supra at 148-149, also appears to have delayed his retrial.

<u>So ordered</u>.