NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1043

COMMONWEALTH

vs.

KAREN CORDEIRO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case involves an unusual circumstance concerning a motion to be released on personal recognizance filed by a criminal defendant awaiting a new trial on a charge of murder in the second degree. She faces a possible sentence of life with the possibility of parole, has been held in custody for almost twenty years, but has been incompetent to stand trial and civilly committed for the last twelve. We conclude that the motion judge failed to comply with the requirements of Brangan v. Commonwealth, 477 Mass. 691, 709-710, S.C., 478 Mass. 361 (2017), in denying the motion. We therefore reverse an order by a single justice of this court denying the defendant's petition

for review.  We allow the petition, vacate the motion judge's bail order, and remand for further proceedings.

Background.  1.  The offense.  The defendant was indicted for murder in the first degree in 2005.  As alleged by the Commonwealth, the murder was brutal.  The victim and the defendant exchanged words outside a nightclub in Providence, Rhode Island.  As they parted ways, the defendant challenged the victim to come back to Fall River to settle their differences.

Unfortunately, the victim, a nineteen year old woman, accepted the challenge, and around 3 A.M., parked her car just down the street from the defendant's apartment and called to tell her she was there.  The defendant grabbed two steak knives and a beer bottle and headed outside.

On leaving her apartment, according to a witness, the defendant and her codefendant, who had been in the apartment with her, bent over and smashed beer bottles against the pavement.  They walked to where the victim had parked her car. The victim exited her car.  The codefendant approached the victim and struck her in the side of the face with a broken beer bottle.  The defendant then approached the victim and began fighting with her.  Another witness testified that she witnessed the defendant stab the victim in the neck while the two women were still on their feet.

At some point, the two of them fell to the ground where the fight continued for a short period of time until the victim's movements gradually became sluggish and slower, perhaps due to blood loss.  The defendant returned to her feet and kicked the victim several times with her shod foot.

According to the allegations, when a police officer arrived a short time later, the defendant held up her hands, put her wrists together and stated, "I did it.  I stabbed her.  It was self-defense."  She submitted to a videotaped interview with detectives at the Fall River Police Department in which she admitted leaving her apartment with either one or two steak knives and a bottle but claimed to have no knowledge of stabbing the victim.

In 2007, a jury convicted the defendant of the lesser included offense of murder in the second degree.  She was sentenced to life in State prison with the possibility of parole.

2.  The defendant's mental health.  In 2009, the defendant filed a motion for a new trial, and following a multiday evidentiary hearing, the trial judge allowed the motion in January 2012.  The judge found both that the defendant may not have been competent during the trial and that there was a considerable risk that the jury would have found the defendant did not act with malice at the time of the crime.  There was

3

evidence that the defendant sometimes saw and heard "weird stuff" that was not real. There were numerous records from her initial pretrial detention at the Bristol County house of correction reflecting mental health issues, including dissociation and visual and auditory hallucinations. And, after trial, in State prison, she was diagnosed with schizotypal personality disorder and schizoaffective disorder.

The judge found that the defendant proffered credible expert testimony that she "suffered from Sleep Paralysis and was in a dissociative state at the time of the killing, during which she merged her repetitive hallucinatory experiences with reality." The judge concluded,

> "there is a considerable risk that the jury would have reached a different conclusion had the newly discovered evidence been admitted at trial. The court has more than a lingering doubt about the outcome of [the defendant's] trial. In the court's view, the newly discovered evidence casts real doubt on the justice of [the defendant's] conviction, warranting a new trial."

After the order for a new trial issued, a different judge set bail at $250,000 cash.

The Commonwealth appealed the order allowing the new trial motion, but in February 2013, the Commonwealth voluntarily dismissed its appeal. In April 2013, the defendant was referred by yet another judge of the Superior Court to the Worcester Recovery Center and Hospital (WRCH) for a competency evaluation. After evaluation, WRCH filed a petition for commitment.

4

In August 2013, fourteen months after bail was set, the defendant was found incompetent to stand trial. The next month, she was civilly committed, pursuant to G. L. c. 123, § 16 (b).

The defendant has been confined to WRCH ever since. Through multiple annual reviews by the court and multiple evaluations by different experts, she has remained both incompetent to stand trial and civilly committed. Due to her mental health issues, the defendant is also under a guardianship, pursuant to Rogers v. Commissioner of Dep't of Mental Health, 390 Mass. 489 (1983), from the Bristol County Probate and Family Court; her sister is her guardian.

Although the defendant remains incompetent to stand trial, medical personnel have concluded that she no longer requires a hospital level of care. Her treatment team considers her suitable for discharge to a staffed group home, where she could receive psychiatric services in a community setting. The Department of Mental Health (DMH) conducted an independent forensic risk assessment in January 2021, which concluded that the treatment team's discharge plan would provide "the necessary safeguards, treatment resources, and supports that have mitigated [the defendant's] risk for violence during her hospitalization." Since the defendant remains civilly committed and a gradual discharge would be necessary, visiting such a program may require overnight passes.

5

3. The instant motion and appeal. Because the defendant cannot meet the bail set in 2012, she cannot be released into the community or get the passes necessary to do so, to receive what her healthcare providers assert is the appropriate level of care, something not available at WRCH. Although the defendant makes factual arguments for why she would not pose a risk were she able to transfer to an outside residential program, these are not locked facilities. Yet, it is the clinical opinion of her treatment team at WRCH that she will quickly decompensate if placed in a jail. This would likely require another lengthy hospitalization in order to return her to baseline and prepare her for discharge.

On February 15, 2022, the defendant moved for release on personal recognizance. The Commonwealth opposed this motion, and a nonevidentiary hearing was held on May 4, 2022, before a judge who was neither the trial judge nor the judge who originally set the bail. On June 1, 2022, the motion was denied. The motion judge concluded, "[t]he Commonwealth continues to have a strong case against the defendant for Murder in the Second Degree, and the defendant continues to face a life sentence (with the possibility of parole) if convicted." The judge found "that [the defendant] would still be a flight risk based on the significant sentence she would be facing if convicted." Finally, the motion judge found "that a significant

6

cash bail, in the amount of $250,000, is still warranted."  The judge wrote, "Any adverse impact on the defendant resulting from this significant bail is outweighed by the Commonwealth's interest in having the defendant held accountable for the brutal, violent attack alleged in this indictment."

The motion judge stated that, "[a]lthough the defendant's mental health has stabilized during her period of commitment, there is no indication that she or the [WRCH] have taken any steps to restore her to a level of competence where the criminal proceedings against her can resume.  At this time, she remains incompetent to stand trial."  This might be read to imply that the proposed residential treatment would not provide any progress toward restoring the defendant's competence to stand trial.  The judge did not mention the fact that the defendant would immediately be eligible for parole if convicted of the most serious crime of which she could be convicted, murder in the second degree, as she has been in custody since 2005 and is entitled to credit for the time she was in custody and civilly committed.  See Commonwealth v. Schmitt, 98 Mass. App. Ct. 403, 405-406 (2020).

The defendant sought review of the bail decision from the single justice of the Supreme Judicial Court.  The Supreme Judicial Court single justice transferred the appeal to the single justice session of this court.  The single justice of

7

this court denied the defendant's petition by order dated October 17, 2022, and this appeal to the full bench was timely filed.

4. <u>The argument before us</u>. As the single justice did, we treat the motion below as a new bail motion, and review it, as the single justice did, for abuse of discretion or clear error of law. The defendant argues that the single justice should not have reviewed the bail determination for abuse of discretion or clear error of law. She argues he should have considered the facts, as well as the law, de novo, and "exercise[d] his own judgment and discretion." <u>Commesso</u> v. <u>Commonwealth</u>, 369 Mass. 368, 373 (1975). She contends that this is so because, unlike in the ordinary case, where the petition is from a bail order that was set by a District Court judge and then reviewed by a judge of the Superior Court before appeal to the single justice, the order below revisits a bail order issued ten years prior, based on facts that emerged over that decade, and only one prior judge heard the issue. We need not decide this issue, however, because we do find a clear error of law, and think the prudent course, regardless of the proper standard of review, would be to remand this to the trial court for a de novo hearing, from which, if the defendant is unsatisfied, appeal can then be had to the single justice.

Turning to the merits, as the defendant points out, Brangan, 477 Mass. at 709-710, requires that a bail order like the one at issue here consider "the length of the defendant's pretrial detention and the equities of the case." As to length of sentence, the defendant argues correctly that in relying on length of sentence she is potentially facing, the motion judge's order does not take into account the fact that she would be eligible for parole immediately, which might reduce any flight risk.

As to the equities, the defendant points out a number of weaknesses in the judge's order. The motion judge in imposing the same bail amount as that imposed in 2012 did not mention the reservations of the trial judge about the strength of the Commonwealth's case and whether a retrial would result in a finding of guilt. The motion judge did not mention that the defendant may have been incompetent at the time the crime was committed. The defendant also argues that with civil commitment and a Rogers guardianship in place, there are significant assurances beyond the bail amount for her appearance in court, which were not present at the time the current bail was established, and that were not considered in the order.

The defendant also notes that the motion judge's order does not state how the bail amount was calculated. Nor, the defendant argues, does the motion judge's order explain why no

less restrictive condition, for example, the ongoing civil commitment with the DMH, or the use of a global positioning system (GPS) bracelet in conjunction with supervision by DMH staff, would not be sufficient to ensure the defendant's appearance in court.

She asserts that her inability to meet the current bail amount is preventing her from receiving the appropriate mental health treatment to improve her condition, and that the equities of the case require her to be granted bail which will allow such treatment. The defendant argues that the judge's statement that her treatment providers have not taken steps to restore her competency is clearly erroneous and that the further steps needed to do so cannot be realized because of the bail order.

The defendant also argues that the motion was impermissibly denied solely due to the possibility of a severe sentence or the seriousness of the alleged crime, which she claims is improper pursuant to Vasquez v. Commonwealth, 481 Mass. 747, 752 (2019).

The defendant asks that we reverse the single justice order and direct entry of an order either granting her release on personal recognizance or to determine a reasonable bail in an amount within her means to pay.

Discussion. We conclude that the motion judge failed to adhere to the requirements of Brangan in denying the defendant's motion and imposing the $250,000 cash bail amount, and that

doing so was clear error. Brangan, 477 Mass. at 705-706, makes clear that dangerousness is not an appropriate consideration in setting bail. The purpose of bail is to ensure that the defendant appears for trial. Id. at 699. With respect to lengthy pretrial detentions due to the defendant's inability to post the amount of bail set by the judge, Brangan, supra at 707, requires that the judge provide "findings of fact and a statement of reasons for the bail decision, either in writing or orally on the record." The defendant's confinement has continued for nineteen years, and twelve years since bail was set at $250,000 cash, so these findings are necessary in this case.

According to Brangan, 477 Mass. at 707, these findings must include consideration of the financial situation of the defendant, and here, there was none. The findings must also include an articulation of why less restrictive alternatives are inadequate, id., and, despite their discussion at the nonevidentiary hearing in this matter, less restrictive alternatives were not addressed in the judge's order. Brangan, supra, also requires that the judge explain how the bail amount was calculated, which the judge did not do. And, again, both the length of pretrial custody and all the equities must be considered, which they were not.

11

To be sure, "a judge need only provide sufficient information to enable the parties and the appellate courts to recognize that the judge has undertaken the analysis required by our holding in Brangan and its codification in the bail statutes" before imposing a bail that is beyond what a defendant can reasonably afford. Walsh v. Commonwealth, 485 Mass. 567, 582 (2020). But mere discussion of some of these issues during the hearing with no resultant findings is not adequate. Our conclusion requires reversal of the single justice order denying the petition for review, vacatur of the motion judge's bail order, and a remand to the trial court for a new hearing in compliance with Brangan and issuance of a new order on the defendant's motion.[1]

We note that many of the questions at issue may turn on factual circumstances. For example, what would be the nature of DMH supervision of the defendant were she discharged by DMH from WRCH in order to attend what they deem the appropriate programs? Can a person involuntarily committed even be placed in such an open setting? What might the efficacy be of other alternatives? The single justice order dated October 17, 2022, is reversed.

---

[1] In light of our conclusion, we need not address the defendant's claim under Vasquez. We do not address the defendant's constitutional excessive bail claims under Article XXVI of the Declaration of Rights of the Constitution of Massachusetts, and the Eighth Amendment to the United States Constitution, but it may be considered de novo in the trial court on remand.

The petition for review is allowed; the bail order is vacated; and the case remanded to the Superior Court for further proceedings consistent with this memorandum and order.[2]

So ordered.

By the Court (Rubin, Massing & Desmond, JJ.[3]),

*Paul Little*

Clerk

Entered:  September 25, 2024.

---

[2] We note that because she has now been in pretrial detention for nineteen years and was found in her first trial to be not guilty of murder in the first degree, a different statute may apply here.  Under G. L. c. 123, § 16 (f),

> "If a person is found incompetent to stand trial, the court shall send notice to the department of correction which shall compute the date of the expiration of the period of time equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted. . . .  On the final date of such period, the court shall dismiss the criminal charges against such person, or the court in the interest of justice may dismiss the criminal charges against such person prior to the expiration of such period."

Of course, there may be reasons the defendant or her counsel choose not to proceed along that avenue, something that is not relevant to the instant matter.

[3] The panelists are listed in order of seniority.

13