NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12648

JOSEPH WALSH & another[1]  vs.  COMMONWEALTH
(and a consolidated case[2]).


Suffolk.     November 7, 2019. - September 2, 2020.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Pretrial Detention.  Bail.  Constitutional Law, Preventive
detention.  Due Process of Law, Pretrial detainees.


Civil actions commenced in the Supreme Judicial Court for
the county of Suffolk on October 30 and November 7, 2018.

The cases were reported by Lowy, J.


Darren T. Griffis for Mateusz Dymon.
Merritt Schnipper (Robert Hennessy also present) for Joseph
Walsh.
Ellyn H. Lazar Moore, Assistant District Attorney, for the
Commonwealth.
Shira Diner & Ryan M. Schiff, for Massachusetts Association
of Criminal Defense Lawyers, amicus curiae, submitted a brief.

---

[1] Committee for Public Counsel Services, intervener.

[2] Mateusz Dymon & another vs. Commonwealth.

LOWY, J.  In these consolidated cases we address issues reported by a single justice of this court concerning the pretrial detention of the petitioning codefendants, Joseph Walsh and Mateusz Dymon (defendants).  At the defendants' arraignments on September 20, 2018, in the Superior Court in Worcester County on charges relating to a home invasion,[3] the Commonwealth moved for each of them to be detained before trial due to their alleged dangerousness, pursuant to G. L. c. 276, § 58A.  Both defendants were found to be indigent and were therefore entitled to appointed counsel for their § 58A hearings.  See G. L. c. 276, § 58A (4); S.J.C. Rule 3:10, as appearing in 475 Mass. 1301 (2016).  Due to a shortage of available defense attorneys, however, there was a delay in the assignment of counsel for the defendants.  Consequently, their § 58A hearings were continued until October 16, 2018, while the defendants were held without bail, so that they could be represented by counsel.  When the § 58A hearings took place, with the defendants' counsel present, the hearing judge set bail in the amount of $7,500 cash for Walsh and $5,000 cash for Dymon.  Neither defendant was able to post the required amount, and both were held in lieu of bail.

---

[3] The defendants were indicted on charges of breaking and entering in the daytime, with the intent to commit a felony, placing a person in fear, G. L. c. 266, § 17; larceny in a building, G. L. c. 266, § 20; vandalism, G. L. c. 266, § 126A; and possession of burglarious tools, G. L. c. 266, § 49.

Both defendants then filed petitions in the county court pursuant to G. L. c. 211, § 3.  They argued that they were entitled to release because their pretrial detention without counsel for more than seven days violated the standards we established for timely appointment of defense counsel for indigent criminal defendants in Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228 (2004).  The single justice reported the defendants' Lavallee claims to the full court for resolution.[4]

We hold that the delay in providing counsel to the defendants does not entitle them to release from pretrial detention under Lavallee.  Lavallee established a protocol to secure representation for indigent defendants in the face of a systemic shortage of available defense attorneys, carefully balancing protection of those defendants' constitutional rights to counsel with the need to ensure public safety.  Although Lavallee created a presumptive seven-day limit on an indigent defendant's pretrial detention without counsel, id. at 246, it authorized release of an unrepresented defendant from pretrial detention only as a last resort if, at a status hearing before the regional administrative justice (RAJ) of the Superior Court, the defendant was still unrepresented and the RAJ determined

---

[4] We acknowledge the amicus brief submitted by the Massachusetts Association of Criminal Defense Lawyers.

that, despite the good faith efforts of the Committee for Public Counsel Services (CPCS), there was still no counsel willing and available to represent the defendant, id. at 247-248. Lavallee did not create an automatic right to release from pretrial detention for any indigent defendant held more than seven days without counsel, and we decline to create such a right in these cases.

There may be individual cases where, based on all the facts and circumstances of the particular case, a judge determines that it is necessary and appropriate to release an indigent defendant who has been held in pretrial detention without counsel. Our ruling here is not intended to foreclose that possibility. But the defendants in the cases before us have not presented such an individualized argument, and their release now would not serve any remedial purpose in any event.

The defendants also argued in their petitions before the single justice that, when the Superior Court hearing judge set bail in amounts that they could not afford to post, resulting in their long-term detention, he violated the standards for bail determinations set out in Brangan v. Commonwealth, 477 Mass. 691 (2017), and in G. L. c. 276, § 58A. With regard to these claims, the single justice reported certain questions concerning (1) the level of analysis and detail that a judge must provide in findings to satisfy the due process requirements that we

established in Brangan when bail is set in an amount that a defendant cannot afford; and (2) what differences, if any, there might be in the requirements for bail determinations under G. L. c. 276, § 58A, and under the bail statutes, G. L. c. 276, §§ 57 and 58.

In response to the first Brangan question, we hold that a judge[5] should provide sufficient information to enable the parties and the appellate courts to recognize that the judge has undertaken the analysis required by our holding in Brangan and its codification in the bail statutes. See Brangan, 477 Mass. at 707 (when imposing bail amount that will likely result in defendant's long-term detention, judge must address why no alternative, less restrictive financial or nonfinancial conditions will suffice to assure defendant's presence at future court proceedings); G. L. c. 276, §§ 57, 58, as amended through St. 2018, c. 69, §§ 168, 172. To assist judges in this process, we have set out infra a series of steps for them to consider before imposing a bail that a defendant likely cannot afford to post.[6]

---

[5] For simplicity, we use the term "judge" here as a shorthand reference that includes the range of judicial officers who are authorized to set bail under G. L. c. 276, §§ 57 and 58. See Brangan v. Commonwealth, 477 Mass. 691, 693 n.3 (2017).

[6] Nothing herein should be interpreted as in any way revoking or superseding the special procedures and standards

We reject, however, the defendants' proposals for additionally requiring a full evidentiary hearing and proof by clear and convincing evidence before a defendant may be held on unaffordable bail.  Given the large number of bail hearings that must be conducted under tight time constraints in the Commonwealth's courts, and the limited evidence available to judges in bail hearings, these additional procedural requirements are impractical and would unduly interfere with the government's interest in the efficient and economical administration of justice.  We therefore continue to adhere to the standards that we endorsed in Querubin v. Commonwealth, 440 Mass. 108, 118-120 (2003), where we held that a full-blown evidentiary hearing is not needed or required to determine the amount of bail that will reasonably assure a defendant's presence at trial, and that preponderance of the evidence is the appropriate standard of proof.  Finally, we hold that, when proceeding under G. L. c. 276, § 58A, as under G. L. c. 276, §§ 57 and 58, a judge may set bail in an amount beyond what a defendant can afford to assure a defendant's appearance at future court proceedings, but not to detain the defendant based on the defendant's dangerousness.  In doing so, however, the

---

that we established for setting bail and conducting bail reviews during the COVID-19 pandemic in Committee for Pub. Counsel Servs. v. Chief Justice of the Trial Court, 484 Mass. 431 (2020), S.C., 484 Mass. 1029 (2020).

judge should also meet the same constitutional due process requirements that we established in Brangan.

Background.  1.  Assignment of counsel for indigent defendants in Worcester County.  CPCS is statutorily responsible for providing defense counsel for eligible defendants who cannot afford to retain their own counsel in criminal proceedings in the Massachusetts State courts.  See G. L. c. 211D, §§ 1, 2B, 5. CPCS provides representation through both a public defender division (PDD) and a private counsel division.  See G. L. c. 211D, § 6.  Attorneys in the PDD are salaried staff attorneys employed by CPCS.  See G. L. c. 211D, §§ 1, 6 (a).  The private counsel division contracts with local organizations to supply private defense attorneys, also known as bar advocates, to represent indigent defendants who are not represented by CPCS staff attorneys.  See G. L. c. 211D, § 6 (b).  Both CPCS staff attorneys and private bar advocates must meet certain benchmarks and performance standards before they can represent a defendant beyond arraignment in a felony case.

In Worcester County, CPCS contracts with Bar Advocates of Worcester County, Inc., to provide private counsel for indigent defendants.  The Worcester PDD office and the bar advocate program are responsible for covering arraignment sessions and accepting appointments in criminal cases in the Worcester County courts.

Although the number of bar advocates in Worcester County certified to handle Superior Court cases has not significantly diminished in recent years, these attorneys are taking fewer Superior Court cases than they did in the past.[7] As a result, there have been delays in the appointment of counsel, especially in cases where the Commonwealth has moved to detain a defendant under G. L. c. 276, § 58A. Finding bar advocates who are willing to accept appointment in a case involving a § 58A hearing can be particularly challenging because these hearings require intense preparation within a short time frame.[8]

2. Proceedings below. The charges against the defendants arise out of their alleged participation in a home invasion in the town of Douglas on July 25, 2018. The defendants were

---

[7] Of fifty-six bar advocates certified to take Superior Court cases during the period from July 1 to December 31, 2018, one attorney dropped off the panel, eleven attorneys took no Superior Court cases, nine took only one or two cases, and thirty-three took between three and five cases. Evidence in the record suggests that bar advocates have reduced their participation for a variety of reasons, including overwork, the low rate of compensation, and the availability of more lucrative opportunities in private practice.

[8] The difficulty has been exacerbated by a significant increase in the number of § 58A hearings in the Superior Court in Worcester County, more than doubling from fifty-four in 2016 to 111 in 2018. During the period from July 1 to December 31, 2018, it took an average of four days after a request was submitted to the bar advocate program administrator to assign a Superior Court certified bar advocate to a defendant, and an average of five days after the request to assign a Superior Court certified bar advocate to a defendant who was scheduled for a § 58A hearing.

initially arraigned in the Uxbridge Division of the District Court Department on July 27, 2018, where they were represented by bar advocates certified to practice in the District Court, but not in the Superior Court. The Commonwealth moved to have the defendants detained before trial due to their alleged dangerousness, pursuant to G. L. c. 276, § 58A. Both defendants were represented by their appointed counsel at § 58A hearings in the District Court on August 3, 2018, and after those hearings, the defendants were found to be dangerous and held without bail.

On September 20, 2018, the defendants were arraigned in the Superior Court in Worcester County on grand jury indictments charging them with breaking and entering in the daytime with the intent to commit a felony, putting a person in fear, G. L. c. 266, § 17, and related charges. Both defendants were again found to be indigent, and Superior Court certified bar advocates were appointed to represent them, but only for that day. The Commonwealth again moved for both defendants to be detained pending trial under G. L. c. 276, § 58A, and a hearing on those motions was scheduled for October 5, 2018. In the meantime, the defendants continued to be held without bail.

On October 5, 2018, counsel for the Commonwealth appeared for the § 58A hearings, ready to proceed, but no defense counsel appeared on behalf of either defendant. No attorney had been appointed to represent Dymon, and although a bar advocate had

filed an appearance to represent Walsh on October 1, 2018, that attorney was not present at the October 5 hearing due to a miscommunication about the hearing date. The presiding judge then ordered the appointment of another bar advocate to represent Walsh and the attorney in charge of the Worcester CPCS office to represent Dymon. In response, the CPCS attorney in charge filed a motion to decline acceptance of the appointment and to release Dymon. She stated in the motion that neither she nor any of the other PDD attorneys in the Worcester CPCS office could take his case because they were either at their maximum caseloads or unqualified to handle Superior Court cases, and therefore they could not provide Dymon with constitutionally effective counsel. The bar advocate assigned to represent Walsh joined in that motion and similarly argued that he was too busy to take Walsh's case. The presiding judge denied the motion but allowed defense counsel to postpone the § 58A hearings so that they would have time to prepare.

On October 16, 2018, the defendants, both of whom were represented by new counsel, objected to their § 58A hearings going forward, arguing that their constitutional and statutory rights had been violated by their pretrial detention for more than seven days without counsel and without a hearing. The hearing judge concluded, however, that there had been good cause for the continuances of the § 58A hearings to October 16, 2018.

With regard to the Commonwealth's motion to hold the defendants in pretrial detention under G. L. c. 276, § 58A, the hearing judge concluded that the defendants did not need to be held and that certain conditions of release would reasonably assure the safety of the community. He set bail at $7,500 for Walsh and $5,000 for Dymon. Although the hearing judge recognized that these bail amounts might be greater than the amounts that the defendants could pay, he concluded that these amounts were necessary, in light of the defendants' criminal histories and the seriousness of the charges, to assure their appearances at future proceedings. The hearing judge also set other conditions on the defendants' release, including home confinement with a global positioning system ankle bracelet. Neither defendant was able to post the required bail, so both defendants remained in detention.

The defendants then filed petitions in the county court under G. L. c. 211, § 3, challenging their pretrial detention. Following a hearing, the single justice issued a decision on December 7, 2018, in which he reserved and reported two sets of issues for our consideration. He reported the defendants' Lavallee claims to the full court, so that we could "decide whether these defendants and others like them are held unconstitutionally . . . in circumstances like this, and, if so,

what remedy or remedies are appropriate."[9]  The single justice

also reported certain legal questions concerning (1) the level

of detail and analysis required by our decision in Brangan, 477

Mass. 691, when a judge sets a cash bail that the defendant

cannot afford; and (2) what differences, if any, there might be

in the requirements for a judge's bail determination under G. L.

c. 276, §§ 57 and 58, as was the case in Brangan, and a bail

determination made in the context of a dangerousness hearing

under G. L. c. 276, § 58A.[10]

Discussion.  1.  Lavallee claims.  In Lavallee, where we

addressed issues arising out of a similar shortage of defense

counsel in Hampden County in 2004, we established a protocol to

protect the rights of indigent defendants when a lack of

---

[9] To assist the court in addressing the defendants' claims, the single justice asked the parties to provide further factual information on various topics relating to the assignment of counsel for indigent defendants in Worcester County, especially in cases involving hearings under G. L. c. 276, § 58A.  The single justice subsequently granted the Commonwealth's motion to remand the case to the Superior Court to hold an evidentiary hearing and make factual findings on these topics.

[10] Apart from reporting these legal questions, the single justice retained jurisdiction over the defendants' conditions of release claims, which he remanded to the Superior Court hearing judge for a more detailed explanation of the reasoning behind the bail amounts and other conditions of release that the hearing judge set for the defendants.  Upon receiving that explanation from the hearing judge, the single justice denied the defendants' conditions of release claims.  The defendants' appeals from that ruling are currently pending before this court in separate dockets.

available defense attorneys interferes with the prompt appointment of counsel.  We ordered the clerk-magistrates of the Superior Court in Hampden County and the Hampden County divisions of the District Court to compile a weekly list of all unrepresented criminal defendants and forward it to the RAJs for the Superior Court and the District Court divisions, the district attorney, the Attorney General, and the chief counsel for CPCS.  We then provided that the Superior Court RAJ should schedule a prompt status hearing for each unrepresented defendant who had been held for more than seven days, or whose case had been pending for more than forty-five days.  If the defendant was still unrepresented as of the time of the hearing, and if the Superior Court RAJ determined that CPCS had made a good faith effort to secure representation and that no counsel was willing and available to represent a defendant, then the Superior Court RAJ was required to order (1) release on personal recognizance of any defendant held in lieu of bail or on preventive detention for more than seven days, subject to probationary conditions under G. L. c. 276, § 87, which could be ordered without the defendant's consent; and (2) dismissal of the charges without prejudice, until such time as counsel was made available, with respect to any defendant facing a felony charge for more than forty-five days without counsel, or a misdemeanor or municipal ordinance violation charge for more

than forty-five days without counsel, unless a judge had declared an intention to impose no sentence of incarceration pursuant to G. L. c. 211D, § 2A.  See Lavallee, 442 Mass. at 247-249.

The defendants in the present cases urge us to extend Lavallee by adopting a universal rule that (a) any indigent defendants who are detained pending a § 58A hearing, or held on cash bail, for whom counsel has not been appointed within seven days after their detention commenced, should be ordered released; and (b) any indigent defendants who have been released before trial on personal recognizance or after posting a cash bail, for whom counsel has not been appointed within forty-five days after their arraignment, should have their cases dismissed without prejudice.  We decline to do so.

We recognize that Lavallee, 442 Mass. at 246, established a presumptive seven-day limit on the pretrial detention of an unrepresented indigent defendant, and a presumptive forty-five-day limit on the pendency of charges against an unrepresented indigent defendant.  But there were sound reasons why the protocol we established in Lavallee did not directly authorize trial judges to automatically release unrepresented indigent defendants on the basis of those standards.  We noted in our opinion that we shared the district attorney's concern about releasing or dismissing cases against persons who were charged

with serious offenses, see id. at 244-245, and observed that it was "[o]ur duty . . . to remedy an ongoing violation of a fundamental constitutional right to counsel consistently with the government's legitimate right to protect the public's safety," id. at 246.

Toward that end, the Lavallee protocol broadly disseminated information about unrepresented defendants, allowed additional time to secure counsel for them before they were released or their charges were dismissed, and authorized the Superior Court RAJ to impose probationary conditions on defendants without their consent if they were released from pretrial detention. By requiring the clerk-magistrates to send lists of unrepresented defendants to the district attorney, Attorney General, chief counsel for CPCS, and the RAJs, we created a system for tracking the impact of the shortage of defense counsel and ensured that officials with significant oversight responsibility in the criminal justice system were aware of the problem and could take appropriate steps to correct it or mitigate its effects. By providing a status hearing before the Superior Court RAJ, we created a final opportunity for CPCS to secure counsel for unrepresented defendants and, to the extent necessary, to triage assignments so as to provide counsel to those accused of the most serious crimes. By empowering the Superior Court RAJ to release unrepresented defendants from pretrial detention or to

dismiss charges against them, we ensured that those decisions would be made with consistency and with knowledge of their collective impact on the criminal justice system.  And by granting the Superior Court RAJ, as part of the Lavallee protocol, the extraordinary power to impose probationary conditions on defendants without their consent if they were released from pretrial detention, we enabled the RAJ to take steps to supervise their release.

The Lavallee protocol thus promoted a systemic, coordinated response to the shortage of defense counsel that could appropriately balance the rights of indigent defendants with the protection of public safety.  The benefits of the Lavallee protocol would be lost if we required trial court judges in all cases to release any indigent defendant who has been detained without counsel for more than seven days, or to dismiss the charges against any indigent defendant who has been unrepresented for more than forty-five days.  We also note that we have now adopted a procedure for promptly determining whether invocation of the Lavallee protocol is necessary when a substantial number of indigent defendants are unrepresented due to a shortage of defense counsel.  See Carrasquillo v. Hampden County Dist. Courts, 484 Mass. 367, 389-391 (2020).

Our ruling here is not intended to prevent judges from deciding in an individual case, based on all the facts and

circumstances of that case, that it is necessary and appropriate to release an indigent defendant who has been held in pretrial detention without counsel, or to dismiss the charges without prejudice against an indigent defendant who has been unrepresented. In an individual case, the lapse of the time limits we established in Lavallee is a significant factor to be considered by the judge, but it does not automatically entitle the defendant to release or dismissal of charges. See Carrasquillo, 484 Mass. at 391 & n.31.

In the cases before us, however, the defendants have not argued for their release based on particular aspects of their situations apart from their proposed general rule that unrepresented indigent defendants should be automatically released from pretrial detention if they are held without counsel for more than seven days. Moreover, no remedial purpose would be served by ordering their release now.

Lavallee's provision for release of defendants held in pretrial detention for more than seven days without counsel was intended to address two issues: (a) the unfairness of subjecting unrepresented defendants to a deprivation of liberty through bail hearings or § 58A hearings, see Lavallee, 442 Mass. at 233-234; and (b) the prejudice to unrepresented defendants' pretrial preparation that results when they are "held in lieu of bail or under an order of preventive detention," and are

consequently "virtually powerless to obtain a lawyer on their own or to begin working on their own defense," id. at 236. Here, in contrast with the petitioning defendants in Lavallee, see id. at 230, 232, the defendants were represented at their § 58A hearings in both the District Court and the Superior Court, so there was no violation of their right to counsel at that stage. And because the defendants have been represented by counsel ever since their § 58A hearings in the Superior Court, there is no reason to release them now to enable them to obtain a lawyer or to facilitate their own pretrial preparation. See id. at 248 (authorizing release of unrepresented defendant from pretrial detention only if, at time of status hearing before RAJ, "there is still no counsel willing and available to represent [the] defendant"). Accordingly, we conclude that the delay in providing counsel to the defendants does not entitle them to release from pretrial detention under Lavallee.

2. Brangan questions. In Brangan, 477 Mass. at 697-700, we held that a judge must consider a defendant's financial resources as a factor when setting a bail amount. We further concluded that, although setting unaffordable bail is not necessarily unconstitutional, see id. at 700-702, "where a judge sets bail in an amount so far beyond a defendant's ability to pay that it is likely to result in long-term pretrial detention, it is the functional equivalent of an order for pretrial

detention, and the judge's decision must be evaluated in light of the same due process requirements applicable to such a deprivation of liberty," id. at 705. Among other requirements, we held that,

> "where, based on a defendant's credible representations and any other evidence before the judge, it appears that the defendant lacks the financial resources to post the amount of bail set by the judge, such that it will likely result in the defendant's long-term pretrial detention, the judge must provide findings of fact and a statement of reasons for the bail decision, either in writing or orally on the record. The statement must confirm the judge's consideration of the defendant's financial resources, explain how the bail amount was calculated, and state why, notwithstanding the fact that the bail amount will likely result in the defendant's detention, the defendant's risk of flight is so great that no alternative, less restrictive financial or nonfinancial conditions will suffice to assure his or her presence at future court proceedings." (Footnotes omitted.)

Id. at 707.

Here, the single justice posed the following questions seeking further guidance concerning the findings of fact and statement of reasons required by Brangan:

> 1. "Can, and should, the full court provide any further guidance, beyond what it has already said in Brangan, for trial court judges, the bar, and single justices of this court as to the level of analysis and detail that must be reflected in the judge's statement when a judge sets an unaffordable cash bail? Must the judge itemize the defendant's resources, articulate a detailed factor-by-factor analysis as to why the amount of the bail is nevertheless appropriate, and specify each less restrictive alternative that has been considered and why each has been rejected -- or is it sufficient that the judge's statement indicates in a more general way the judge's consideration of the relevant factors and the animating rationale for his

or her determination?  In short, what level of detail is required for the statement?"

2.  "What differences, if any, might there be in the requirement for a judge's bail determination (and the statement of reasons he or she must provide) under G. L. c. 276, §§ 57 and 58, as was the case in Brangan, and a bail determination made in the context of a dangerousness hearing pursuant to G. L. c. 276, § 58A, as we have here? For example, may a judge set a cash bail that a defendant cannot post under G. L. c. 276, § 58A (3)?"

a.  Application of procedural due process balancing test. The single justice's first question concerning "the level of analysis and detail that must be reflected in the judge's statement" when setting an unaffordable bail is fundamentally a question about the degree of procedural due process that a defendant must receive.  Therefore, in answering this question, we "must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs."  Josh J. v. Commonwealth, 478 Mass. 716, 722 (2018), quoting Paquette v. Commonwealth, 440 Mass. 121, 131 (2003), cert. denied, 540 U.S. 1150 (2004).

i.  Interests of the defendant.  Whenever bail is set in an amount that a defendant cannot afford to post, that defendant faces a total deprivation of liberty, a fundamental right, through pretrial detention.  See Brangan, 477 Mass. at 702-703, 705.  Although this deprivation of liberty is only "temporary" -- until a trial takes place, the defendant pleads guilty, or the

case is dismissed -- it can nevertheless be lengthy.  In

Brangan, the defendant had been held on bail he could not afford

for more than three and one-half years when we issued our

decision.  See id. at 693.  In the present consolidated cases,

the defendants have been held on bail since October 16, 2018.

This temporary deprivation of liberty can have severe and

long-lasting collateral consequences.  The United States Supreme

Court has aptly catalogued some of the negative effects of

pretrial detention:

> "The time spent in jail awaiting trial has a detrimental
> impact on the individual.  It often means loss of a job; it
> disrupts family life; and it enforces idleness.  Most jails
> offer little or no recreational or rehabilitative programs.
> The time spent in jail is simply dead time.  Moreover, if a
> defendant is locked up, he is hindered in his ability to
> gather evidence, contact witnesses, or otherwise prepare
> his defense.  Imposing those consequences on anyone who has
> not yet been convicted is serious.  It is especially
> unfortunate to impose them on those persons who are
> ultimately found to be innocent."  (Footnotes omitted.)

Barker v. Wingo, 407 U.S. 514, 532-533 (1972).  See Brangan, 477

Mass. at 709 n.23 ("Pretrial detention disrupts a defendant's

employment and family relationships, with often tragic

consequences").

ii.  Risk of erroneous deprivation.  In considering the

risk that a bail decision will erroneously deprive a defendant

of liberty when it is unnecessary to assure the defendant's

future appearance in court, we recognize that bail decisions

often involve difficult judgment calls made under challenging

circumstances. Judges making bail decisions must carefully balance the defendant's liberty interest against the government's interest in assuring the defendant's return to court, taking into account a range of statutory factors. They usually have to make these decisions based only on the limited information about the defendant that they can glean from the representations of counsel, a police report, a court activity record information (CARI) report, a warrant management system report, and the indigency intake form filled out by the defendant with the help of a probation officer to determine whether a defendant is eligible for a court-appointed attorney. And judges must often make bail decisions quickly, while handling a crowded docket. Especially under these circumstances, determining whether bail is necessary and, if so, in what amount, can be a challenging task in many cases.

In theory, the risk that a defendant will be erroneously deprived of liberty in the bail-setting context can take two forms. First, the judge may overestimate the amount of bail that a defendant can reasonably afford. As a result, the judge may set a bail amount that is not necessarily intended to result in pretrial detention, but in fact has that effect. Second, the judge may overestimate the amount of bail that is necessary to reasonably assure a defendant's presence at future proceedings, choosing an amount that is more than a defendant can afford when

in fact an affordable amount, or other nonfinancial conditions of release, would suffice.  But in actual practice in a particular case, it can be difficult to draw these distinctions. And given the discretionary nature of bail decisions and the many factors that judges may consider in reaching those decisions, it is hard to assess in the aggregate whether bail decisions are "correct" or "incorrect" and how often persons are erroneously held on bail.

According to recent Trial Court data for cases arraigned and disposed of in the District Court and Boston Municipal Court during the seventeen months after our decision in Brangan, defendants were released on personal recognizance or with nonfinancial conditions in the overwhelming majority of cases -- 80.2 percent.[11]  Defendants were held without bail in a very small percentage of these cases -- 3.7 percent.[12]  Bail was set in the remaining 16.1 percent of cases, with defendants being released on bail in 9.2 percent of all cases and held on bail in 6.9 percent of all cases.[13]  The cohort of persons held on bail

---

[11] Massachusetts Trial Court, Department of Research and Planning, Pre-Trial Release Decisions:  Pre and Post Brangan v. Commonwealth, at 1-2 (May 7, 2019) (Pre-Trial Release Decisions), https://www.mass.gov/doc/pretrial-release-decisions/download [https://perma.cc/7TVJ-URG8].

[12] Pre-Trial Release Decisions, supra at 2.

[13] Pre-Trial Release Decisions, supra at 2.

is thus relatively small when considered as a percentage of all cases. But it looms larger when considered as a percentage of those cases where bail was set. During the seventeen months after our decision in Brangan, defendants were held on bail in 42.7 percent of the cases where bail was imposed as a condition of release in the District and Boston Municipal Courts.[14] If pretrial detention is the outcome in more than two out of every five cases where bail is set, then it appears that too often one of bail's purposes -- "preserv[ing] the liberty of the accused" pending trial -- is not being achieved. Brangan, 477 Mass. at 692.

iii. Government interests. The government has a legitimate and compelling interest in assuring that persons charged with criminal offenses return to court and appear at trial. See Querubin, 440 Mass. at 112-116. The government also has an important interest in ensuring that bail decisions are made efficiently and economically. The volume of bail hearings is enormous. According to Trial Court data, more than 150,000 criminal cases were arraigned and disposed of in the District and Boston Municipal Courts during the seventeen months after our decision in Brangan. Persons were released on bail or held subject to bail in approximately sixteen percent of those cases

---

[14] Pre-Trial Release Decisions, supra at 3.

-- a total of more than 24,000 cases.[15]  Adopting procedural requirements for bail hearings that are too onerous could wreak havoc with the efficient processing of these cases.

b.  Steps to be considered in setting bail.  Taking into account the fundamental liberty interests at stake, the serious collateral consequences of pretrial detention for defendants and their families, and the significant percentage of bail orders that result in pretrial detention, we conclude that some clarification of the necessary procedural protection would be useful to ensure that the due process requirements we established in Brangan are effective.  But any procedures we adopt must not unduly burden the efficient and economical administration of justice.  Accordingly, we seek to steer a middle course.  On the one hand, we conclude that when a judge sets a bail that a defendant cannot afford to post, the judge must do more than articulate the animating rationale for that determination and indicate in a general way that he or she has considered the relevant factors.  But neither do we require the judge to articulate a detailed factor-by-factor analysis as to why the amount of the bail is appropriate, or to specify each less restrictive alternative that has been considered and why each has been rejected.  Rather, we hold that a judge need only

---

[15] See Pre-Trial Release Decisions, supra at 1-2.

provide sufficient information to enable the parties and the appellate courts to recognize that the judge has undertaken the analysis required by our holding in Brangan and its codification in the bail statutes.  Cf. Pinney v. Commonwealth, 484 Mass. 1003, 1005-1006 (2020) (where defendant was charged with murder in first degree and judge imposed $250,000 cash bail that defendant could not afford, judge's findings and reasons were sufficient to satisfy due process where it was clear from record that judge considered relevant factors and engaged in required individualized bail determination); A Juvenile v. Commonwealth, 480 Mass. 1012, 1014 (2018) ("where a bail determination is likely to lead to pretrial detention, a judge making that determination . . . must make findings . . . demonstrat[ing] that [he or she] has engaged in fair and meaningful consideration of reasonable alternatives relevant to the circumstances of the case such that a reviewing court can be satisfied that the requirements detailed in Brangan have been met").  The judge's statement need not be lengthy, and it may be written or oral, as long as it is on the record and provides this information.  See Brangan, 477 Mass. at 708.  To assist judges in undertaking this analysis, we set out a series of steps for them to consider before imposing a bail that a defendant cannot afford.

i.  Policy of limiting pretrial restrictions on liberty.
As a general principle, decisions about pretrial release and
detention should be governed by "the Commonwealth's policy of
limiting pretrial restrictions on liberty."  Commonwealth v.
Perito, 417 Mass. 674, 678 (1994).  "[D]efendants should be
burdened with the fewest restrictions on their pretrial liberty
that will adequately assure their presence at trial."  Id.,
quoting Reporters' Notes to Mass. R. Crim. P. 6, Mass. Ann.
Laws, Rules of Criminal Procedure, at 94 (Law. Coop. 1979).  The
roots of this policy reach back to Massachusetts's earliest days
as a colony, as expressed in The Body of Liberties (1641):  "No
mans person shall be restrained or imprisoned by any Authority
whatsoever, before the law hath sentenced him thereto, If he can
put in sufficient securitie, bayle or mainprise, for his
appearance . . . ."  Brangan, 477 Mass. at 692.

The policy of limiting pretrial restrictions on liberty is
based in part on constitutional principles.  Because liberty and
freedom from physical restraint are fundamental rights protected
by the Fourteenth Amendment to the United States Constitution
and arts. 1, 10, and 12 of the Massachusetts Declaration of
Rights, the "strict scrutiny" test of substantive due process
requires that governmental restraints on liberty must be
narrowly tailored to further a legitimate and compelling
governmental interest.  See United States v. Salerno, 481 U.S.

739, 746 (1987); Sharris v. Commonwealth, 480 Mass. 586, 594-595 (2018); Josh J., 478 Mass. at 721; Brangan, 477 Mass. at 702-703.[16] Further, "[e]ven where government action survives substantive due process scrutiny, procedural due process protections require that the governmental action be implemented in a fair manner." Josh J., supra at 722, citing Paquette, 440 Mass. at 131. Accordingly, we have observed that the government's legitimate and compelling interest in assuring a defendant's presence at trial can justify pretrial detention "only 'in carefully circumscribed circumstances and subject to quite demanding procedures.'" Brangan, supra at 705, quoting Mendonza v. Commonwealth, 423 Mass. 771, 790 (1996).[17]

ii. Presumption of release on personal recognizance. In accord with the Commonwealth's policy of limiting pretrial restrictions on liberty, the "preferred disposition" under our

---

[16] We have sometimes added to this test the further requirement that the challenged statute or other government restriction must "be the least restrictive means available to vindicate" the government's interest. Sharris, 480 Mass. at 598, quoting Commonwealth v. Weston W., 455 Mass. 24, 35 (2009).

[17] For example, in Aime v. Commonwealth, 414 Mass. 667 (1993), we held that 1992 amendments to G. L. c. 276, § 58, which allowed judges to consider a defendant's dangerousness in setting bail, did not meet the due process requirements of the Fourteenth Amendment because they "essentially grant[ed] the judicial officer unbridled discretion to determine whether an arrested individual is dangerous" and lacked adequate procedures "'designed to further the accuracy' of the judicial officer's determination." Id. at 682, quoting Salerno, 481 U.S. at 751.

"detailed general bail statute," G. L. c. 276, § 58, is release

on personal recognizance without surety.  Commonwealth v. Dodge,

428 Mass. 860, 865 (1999).  See G. L. c. 276, § 58 (providing

that judge or other authorized officer "shall admit such person

to bail on his [or her] personal recognizance without surety

unless said justice . . . determines, in the exercise of his [or

her] discretion, that such a release will not reasonably assure

the appearance of the person before the court").[18]  "Our

_____

[18] Although the same language does not appear in G. L.
c. 276, § 57, which governs bail proceedings in the Superior
Court, see Brangan, 477 Mass. at 697, we have previously
indicated that the presumption of release on personal
recognizance is equally applicable under § 57.  See Commonwealth
v. Hampe, 419 Mass. 514, 518 n.3 (1995) (citing G. L. c. 276,
§ 57, as well as § 58, in stating that "[a] person under arrest
has a right to a hearing on admission to bail with a presumption
of release on personal recognizance").  We also note that § 57
provides that "[a]ll persons authorized to take bail under this
section shall be governed by the rules established by the
supreme judicial or superior court."  Moreover, the Superior
Court's own rules (albeit for persons authorized to take bail
out of court) provide that "[a]ny person charged with an offense
other than an offense punishable by death, or for any offense on
which a warrant of arrest has been issued by the Superior Court,
is required by law to be released on his personal recognizance
pending trial unless the person setting the terms of release
determines, in the exercise of his discretion, that such a
release will not reasonably assure the appearance of the person
as required."  Rule 3 of the Rules of the Superior Court
Governing Persons Authorized to Admit to Bail Out of Court
(2014).  See also Trial Court Guidelines for Pretrial Conditions
of Release, at 1 (Nov. 2016) ("the legal presumption for all
criminal charges excluding capital cases is that an individual
will be released on personal recognizance").  To the extent that
dictum in Serna v. Commonwealth, 437 Mass. 1003, 1003 n.1
(2002), may suggest that release on personal recognizance

Legislature intended § 58 to protect the rights of the defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety . . . ." Delaney v. Commonwealth, 415 Mass. 490, 495 (1993).

The presumption that the defendant is entitled to release on personal recognizance without surety may be rebutted, however, by a history of prior court defaults[19] or evidence that the defendant poses a flight risk, or the other factors listed in the bail statutes:

> "the nature and circumstances of the offense charged, the potential penalty the person faces, the person's family ties, financial resources and financial ability to give bail, employment record and history of mental illness, his [or her] reputation and the length of residence in the community, his [or her] record of convictions, if any, any illegal drug distribution or present drug dependency, any flight to avoid prosecution or fraudulent use of an alias or false identification, any failure to appear at any court proceeding to answer to an offense, whether the person is on bail pending adjudication of a prior charge, whether the acts alleged involve abuse . . . , whether the person has any history of [abuse prevention] orders issued against him [or her] . . . , whether he [or she] is on probation,

without surety is not available under G. L. c. 276, § 57, we reject it.

[19] We note, however, that not all defaults necessarily indicate a willful failure to appear. A special commission established by the Legislature recently recommended developing a system for differentiating between "no show" defaults and defaults entered due to a defendant's late appearance the same day, failure to pay a fine on time, or missing a court date because he or she was being held in another county. See Final Report of the Special Commission to Evaluate Policies and Procedures Related to the Current Bail System, at 20 (Dec. 31, 2019), https://d279m997dpfwgl.cloudfront.net/wp/2020/01/0102_bail-reform-report.pdf [https://perma.cc/ZR3X-Q3FW].

parole, or other release pending completion of sentence for any conviction, and whether he [or she] is on release pending sentence or appeal for any conviction."

G. L. c. 276, § 58.  See G. L. c. 276, § 57.

iii.  <u>Nonfinancial conditions of release</u>.  If the Commonwealth rebuts the presumption of release on personal recognizance, the judge should consider whether there are nonfinancial conditions of release that will adequately assure the defendant's appearance before the court.  As we noted in <u>Brangan</u>, 477 Mass. at 709 n.23, "[r]esearch indicates that alternatives to cash bail and secured bonds, such as unsecured bonds, pretrial supervision, and court notification systems, may be just as effective in assuring that a defendant appears at future court proceedings."

The judge may impose nonfinancial conditions of release that are related to the nature of the charges or the goal of assuring the defendant's return to court, or both, under G. L. c. 276, §§ 57 and 58.  If the judge "determines it to be necessary, the defendant may be ordered to abide by specified restrictions on personal associations or conduct including, but not limited to, avoiding all contact with an alleged victim of the crime and any potential witness or witnesses who may testify concerning the offense, as a condition of release."  G. L. c. 276, § 58.  Or, where the defendant has been charged with certain crimes involving domestic abuse, the judge "may impose

conditions on a person's release in order to ensure the appearance of the person before the court and the safety of the alleged victim, any other individual or the community."  Id. See G. L. c. 276, § 57; G. L. c. 276, § 42A.

For our purposes here, it is particularly important to note that the Legislature has established several nonfinancial alternatives to bail.  For example, the court may order the defendant to participate in a pretrial services program at the office of community corrections (OCC), in lieu of bail or as a condition of release consistent with G. L. c. 276, §§ 57, 58, and 58A, pursuant to G. L. c. 211F, § 3A.[20]  With the defendant's consent, the court may also order the defendant to participate in a treatment program offered by OCC in lieu of bail or as a condition of release.[21]  In addition, pursuant to G. L. c. 276, § 87, the court may place the defendant on pretrial conditions

---

[20] "Participation in a pretrial services program [administered by the office of community corrections] may be ordered by the court, in lieu of bail or as a condition of release consistent with [G. L. c. 276, §§ 57, 58, and 58A]. The court may dictate the duration and conditions of the pretrial services program."  G. L. c. 211F, § 3A (a), inserted by St. 2018, c. 72, § 12.  See G. L. c. 211F, § 1, as amended through St. 2018, c. 72, § 8.

[21] "Participation in a community corrections program pursuant to [G. L. c. 211F] may be ordered by the court, in lieu of bail, or as a condition of release; provided, however, that the defendant shall consent to such participation."  G. L. c. 276, §§ 57, 58, 58A, as amended through St. 2018, c. 69, §§ 169, 173, 175.

of release that are supervised by the probation service if the defendant consents.[22]  The probation service has also begun a pretrial services initiative that includes the use of text messaging to remind defendants of court dates, pursuant to G. L. c. 276, § 99G.

iv.  Setting bail.  If the judge determines that nonfinancial conditions of release are inadequate and that bail is necessary to assure the defendant's appearance before the court, then the judge must consider the defendant's financial resources in setting the amount of bail.  See G. L. c. 276, § 57 ("bail shall be set in an amount no higher than what would reasonably assure the appearance of the person before the court after taking into account the person's financial resources"); G. L. c. 276, § 58 (same); Brangan, 477 Mass. at 698-700 (discussing common-law and constitutional principles that mandate consideration of a defendant's financial resources in setting bail).

---

[22] See Commonwealth v. Preston P., 483 Mass. 759, 762-763 (2020) (distinguishing between pretrial probation under G. L. c. 276, § 87, and pretrial conditions of release that are supervised by probation service under § 87).  Of course, the court also has the power to impose nonfinancial conditions of release pursuant to G. L. c. 276, §§ 57 and 58, as discussed supra.  Unlike pretrial conditions of release under § 87, conditions of release under §§ 57 and 58 may be ordered without the defendant's consent, except when the court orders participation in a community corrections treatment program.  See note 21, supra.

To the extent possible, the judge should try to determine what amount the defendant can reasonably afford to post. As an initial step, the judge can simply ask the defendant or defense counsel how much the defendant can reasonably afford to post. See Brangan, 477 Mass. at 707 n.21 (referencing "what a defendant represents that he can pay" as baseline for establishing amount that defendant can reasonably afford). But the judge is not bound by this representation, of course, and may independently decide how much the defendant can reasonably afford to post based upon the probation service report, which determines whether a defendant qualifies as indigent for court-appointed counsel, and any other evidence before the court. See id. ("The judge also is not bound by a defendant's representation as to what bail he can reasonably afford, and may indicate that she is not convinced, based on the record, that the defendant cannot post bail in the amount set by the judge"); id. at 707 n.20 ("consideration of a defendant's financial resources may be facilitated by reviewing the report prepared by the probation department to determine whether a defendant qualifies as indigent for court-appointed counsel"); Mass. R. Crim. P. 7 (a) (3) and 7 (b) (2), as appearing in 461 Mass. 1501 (2012); S.J.C. Rule 3:10, § 5 (a), as appearing in 475 Mass. 1301 (2016); G. L. c. 211D, § 2A (a)-(c). In deciding how much bail the defendant can afford, as in calculating a defendant's

ability to pay restitution, the judge should consider "the financial resources of the defendant, including income and net assets, and the defendant's financial obligations, including the amount necessary to meet minimum basic human needs such as food, shelter, and clothing for the defendant and his or her dependents." Commonwealth v. Henry, 475 Mass. 117, 126 (2016).

We recognize that it will often be difficult to ascertain the amount of bail that a defendant can reasonably afford given the limited information available to the court and, in some cases, the possibility that the defendant may have unstated or illegal sources of income. But it is worthwhile for the judge to try to determine this amount, to the extent it is possible, so that the judge will be aware of whether the bail ultimately imposed will likely result in the defendant's pretrial detention.

The judge should then determine the amount of bail that is necessary to assure the defendant's appearance. This amount may be more than what the defendant can reasonably afford. See G. L. c. 276, § 57 ("a higher than affordable bail may be set if neither alternative nonfinancial conditions nor a bail amount which the person could likely afford would adequately assure the person's appearance before the court"); G. L. c. 276, § 58 (same); Brangan, 477 Mass. at 701 ("Bail that is beyond a defendant's reach is not prohibited"). But if the judge sets

bail in an amount that is more than the defendant can afford,
the judge must also

> "provide written or orally recorded findings of fact and a
> statement of reasons as to why, under the relevant
> circumstances, neither alternative nonfinancial conditions
> nor a bail amount that the person can afford will
> reasonably assure his or her appearance before the court,
> and further, must explain how the bail amount was
> calculated after taking the person's financial resources
> into account and why the commonwealth's interest in bail or
> a financial obligation outweighs the potential adverse
> impact on the person, their immediate family or dependents
> resulting from pretrial detention."

G. L. c. 276, § 58, as amended through St. 2018, c. 69, § 172.
See G. L. c. 276, § 57, as amended through St. 2018, c. 69,
§ 168.  A judge may satisfy this requirement by reviewing,
either in writing or orally on the record, the particular
circumstances and factors that have led the judge to conclude
that the presumption of release on personal recognizance has
been rebutted, that nonfinancial conditions and a lesser bail
amount would be inadequate, and that the Commonwealth's interest
in this bail amount outweighs the potential adverse impact of
pretrial detention on the defendant and his or her immediate
family or dependents.[23]  Cf. Pinney, 484 Mass. at 1004, 1004-1006

---

[23] For example, an oral statement on the record such as the
following is more than sufficient:

> "Taking into account the presumption of recognizance that
> has been rebutted in this case and the conditions of bail
> that I will impose, I will impose a bail of $____ cash.
> After a review of the defendant intake sheet and the

(judge's findings and reasons for imposing bail that defendant could not afford satisfied due process, where defendant was charged with murder in first degree and judge weighed, among other factors, defendant's risk of flight, previous record, finances, work history, and family circumstances, as well as nature of charges and strength of Commonwealth's case); A Juvenile, 480 Mass. at 1014-1015 (judges provided sufficient detail to demonstrate that there was no abuse of discretion in setting bail that juvenile could not afford where judges noted that juvenile was in default and had essentially fled from custody when he was arrested on new charges, and that there was no reasonable alternative to bail).  In accord with the statute, the judge should also explain, at least in general terms, how the bail amount was determined.

---

proffer of the defendant through counsel and the argument of counsel, I find that the defendant cannot reasonably afford to make that bail.  Recognizing that the defendant's financial ability to make bail and the defendant's financial conditions are factors I must consider in setting bail based on the nature and circumstances of this charge of indecent assault and battery on a child under fourteen, and the defendant's alleged attempts to coerce and manipulate this alleged victim not to disclose the defendant's alleged misconduct, the fact that the defendant has eight appearance defaults on six separate charges, his violations of chapter 209A restraining orders, which like a posted bail, are orders of the court, the strength of the Commonwealth's case, and that the defendant has numerous other prior convictions, including an escape, and convictions for drug distribution, I find that the need for this bail amount exceeds the adverse impact on the defendant and his family."

c.  Other proposed procedural protections.  The defendants
further propose that we should adopt additional procedural
protections before a court can impose an unaffordable bail on a
defendant.  They argue that we should require a full evidentiary
hearing, at which the defendant has the right to testify, to
present witnesses, and to cross-examine witnesses, as is
required when the Commonwealth moves to have a defendant held
for dangerousness under G. L. c. 276, § 58A.  The defendants
also urge us to adopt "clear and convincing evidence" as the
appropriate standard of proof for the statutory findings that a
judge must make before imposing an unaffordable bail.  See G. L.
c. 276, §§ 57, 58.  We decline to adopt these additional
requirements, based on principles of stare decisis and our
concern that these requirements would place unrealistic burdens
on judges.

In Querubin, where we considered the due process
requirements that should apply when a defendant is held without
bail due to a risk of flight, we adopted due process standards
that conflict with the defendants' proposals.  We concluded that
a "full-blown evidentiary hearing that includes the right to
present and cross-examine witnesses is not needed or required"
for a bail proceeding, even where the defendant is held without
bail, although "such a hearing, or some variation, may be held
in the discretion of the judge when the circumstances of a

particular case warrant." Querubin, 440 Mass. at 118. We also held that preponderance of the evidence is the appropriate standard for determining whether a defendant poses a flight risk and whether any condition or combination of conditions will reasonably assure the defendant's appearance, following Federal decisions under the Federal Bail Reform Act of 1984, 18 U.S.C. § 3142. See id. at 119-120. More recently, we considered the standards for bail decisions when a defendant has been charged with murder in the first degree, and we followed Querubin in holding that, in such a case, a full evidentiary hearing is not required and that pretrial detention without bail is appropriate where the judge concludes, based on a preponderance of the evidence, that it is necessary to assure the defendant's appearance at future court proceedings. Vasquez v. Commonwealth, 481 Mass. 747, 748, 758 (2019). Given that we concluded in these cases that a nonevidentiary hearing and proof by a preponderance of the evidence are sufficient safeguards even where a defendant is being held without bail to assure his future appearance, it would be incongruous for us to embrace a higher standard where a defendant's pretrial detention results from the imposition of an unaffordable bail.

"Adherence to the principle of stare decisis provides continuity and predictability in the law . . . ." Commonwealth v. Ruiz, 480 Mass. 683, 694 (2018), quoting Stonehill College v.

Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, cert. denied sub nom. Wilfret Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004).  We acknowledge that "the principle is not absolute," Ruiz, supra, quoting Stonehill College, supra, and that "[t]he force of stare decisis is at its nadir in cases concerning procedural rules that implicate fundamental constitutional provisions," Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 301 (2015), quoting Alleyne v. United States, 570 U.S. 99, 116 n.5 (2013).  But neither should we upset settled law unless "the benefits of so doing outweigh the values underlying stare decisis."  Ruiz, supra at 694-695, quoting Stonehill College, supra.  Here, we conclude that the benefits of adopting the additional procedural protections proposed by the defendants are insufficient to outweigh the values underlying stare decisis.

Given the nature of the evidence that is typically presented at a bail hearing, and existing procedural protections, requiring a full evidentiary hearing in every single case where the court is contemplating imposing a bail that the defendant may be unable to afford would not add a significant benefit.  As we observed in Querubin, 440 Mass. at 118, in most bail proceedings,

"[t]he necessary determination can be adequately presented and decided based on documents (e.g., police reports, witness statements, letters from employers and others, and probation records) and the representations of counsel."

The defendant has the right to be represented by counsel at a bail hearing, see Lavallee, 442 Mass. at 234, and counsel should be given the opportunity to address (1) the defendant's CARI report, including especially the nature of any defaults; (2) the police report, or the prosecution's version of the offense; and (3) the defendant's ability to pay and his or her risk of flight or otherwise failing to return to court.

The time constraints on bail hearings would make it impractical to require a full-blown evidentiary hearing, comparable to that required under G. L. c. 276, § 58A, before a court can set a bail that a defendant may be unable to pay. Indeed, there is a certain irony about the defendants' contention that bail hearings should be more like § 58A hearings, given the challenges that CPCS has already encountered in providing defense counsel coverage for the steeply increasing number of § 58A hearings in Worcester County, as the defendants themselves experienced. To be sure, lack of resources cannot justify forgoing constitutional safeguards where they are necessary. But since the balancing test bids us to consider the government's interest in efficient and economic administration, it is appropriate to consider the burden on existing resources

that a full evidentiary hearing would impose if it were required in every case where the court is contemplating a potentially unaffordable bail. Judges always have the option of holding an evidentiary hearing, or some variation, if they conclude that it is warranted by the circumstances in a particular case. See Querubin, 440 Mass. at 118. We need not require more.

For similar reasons, we also adhere to preponderance of the evidence as the appropriate standard for bail hearings, even where the court imposes an unaffordable bail. As we have discussed supra, the evidence available to judges at bail hearings is typically relatively limited. Under those circumstances, asking judges to determine whether their conclusions are supported by clear and convincing evidence, instead of a preponderance of the evidence, is not realistic and would not improve the fact-finding process.

d. Differences between bail determinations under G. L. c. 276, §§ 57 and 58, and under G. L. c. 276, § 58A. i. Whether § 58A prohibits setting unaffordable bail to assure a defendant's appearance. We now turn to the single justice's second Brangan question, concerning differences in setting bail under the bail statutes, G. L. c. 276, §§ 57 and 58, and under the dangerousness statute, G. L. c. 276, § 58A. We begin with his particular query as to whether a judge may set a cash bail that a defendant cannot post under G. L. c. 276, § 58A.

Subsection 58A (2), which lists various conditions of release that a judge may impose, states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person."  Subsection 58A (3) further states:

> "A justice may not impose a financial condition under this section that results in the pretrial detention of the person.  Nothing in this section shall be interpreted as limiting the imposition of a financial condition upon the person to reasonably assure his appearance before the courts."

The defendants contend that, in the context of a § 58A hearing, these provisions flatly prohibit imposing a bail amount that a defendant cannot afford to post, resulting in a defendant's pretrial detention, under any circumstances.  We disagree.

We have addressed this issue twice before, in Mendonza, 423 Mass. 771, and in Brangan, 477 Mass. 691.  In Mendonza, supra at 774, we interpreted the foregoing provisions in § 58A to mean that "[t]he judge is precluded from imposing a financial condition that results in pretrial detention in order to assure the safety of other persons, although financial conditions having that effect are not precluded for the purpose of assuring his appearance before the court."  We reached the same conclusion in Brangan, where we cited legislative history related to the Federal Bail Reform Act, the model for § 58A, which stated that the purpose of similar language in 18 U.S.C.

§ 3142(c)(2) "is to preclude the sub rosa use of money bond to detain dangerous defendants," and "its application does not necessarily require the release of a person who says he is unable to meet a financial condition of release which the judge has determined is the only form of conditional release that will assure the person's future appearance." Brangan, supra at 701 n.15, quoting Sen. Rep. No. 98-225, 98th Cong., 2d Sess. (1984), reprinted in U.S.C.C.A.N. 3182, 3199 (1994). We also noted that, based on that legislative history, the Federal courts have similarly rejected the argument that defendants are necessarily entitled to an affordable bail under the Federal Bail Reform Act. See Brangan, supra. See also, e.g., United States v. Mantecon-Zayas, 949 F.2d 548, 550 (1st Cir. 1991); United States v. Jessup, 757 F.2d 378, 388 (1st Cir. 1985) (Federal Bail Reform Act provision stating that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person" does not foreclose detention where defendant cannot afford to post bail amount set by judicial officer and no other set of conditions is sufficient to guarantee defendant's appearance).

The Legislature has amended § 58A several times since our decisions in Mendonza and Brangan, but has not made any changes to alter or clarify the language at issue here. See St. 2010, c. 256, § 125; St. 2014, c. 260, §§ 33-38; St. 2014, c. 284,

§ 97; St. 2018, c. 69, §§ 174-176; St. 2018, c. 219, § 30.  We therefore conclude that our interpretation of that language is consistent with the legislative intent, and we see no reason to depart from that interpretation.  See Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 383 (2019) ("Where, as here, the Legislature . . . repeatedly has amended the statute without changing the language at issue, we presume that it has adopted the construction of the statute upon which Massachusetts courts . . . have relied").

ii.  Differences in setting bail under G. L. c. 276, §§ 57, 58, and 58A.  Considering more generally the single justice's question about differences in setting bail under G. L. c. 276, §§ 57 and 58, and under G. L. c. 276, § 58A, there are of course significant differences among these statutes.  Section 58A establishes a procedure under which the Commonwealth may move for defendants who have been charged with certain serious offenses to be detained pretrial, or released on conditions, due to their dangerousness.  The focus of the hearing under § 58A is therefore on the defendant's dangerousness, see Mendonza, 423 Mass. at 788, and the defendant is appropriately entitled to an evidentiary hearing at which he "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information," G. L. c. 276, § 58A (4).  Consequently, in

contrast with §§ 57 and 58, bail may only be imposed under § 58A after a full evidentiary hearing. See G. L. c. 276, § 58A (2) (providing that "upon the motion of the commonwealth, the judicial officer shall hold a hearing pursuant to subsection [4]," after which judicial officer may "issue an order that, pending trial, the individual shall . . . be . . . released on conditions of release as set forth herein").

But the procedural requirements that we have established here and in Brangan are equally applicable to bail determinations under G. L. c. 276, § 58A, because these requirements are based on the constitutional demands of due process. Accordingly, in a § 58A hearing where, in addition to considering the defendant's dangerousness, the judge is contemplating imposing a bail that a defendant cannot afford to post to assure the defendant's appearance, the judge should also provide sufficient information to enable the parties and the appellate courts to recognize that the judge has undertaken the analysis required by our holding in Brangan.

Conclusion. We conclude that the delay in providing counsel to the defendants does not entitle them to release from pretrial detention under Lavallee. In response to the single justice's Brangan questions, we hold that a judge should provide sufficient information to enable the parties and the appellate courts to recognize that the judge has undertaken the analysis

required by our holding in <u>Brangan</u> and its codification in the bail statutes before imposing a bail that is beyond what a defendant can reasonably afford.  The consolidated cases are remanded to the single justice for entry of orders denying the defendants' petitions for relief under G. L. c. 211, § 3, with regard to the claims that they have asserted under <u>Lavallee</u>.[24]

<u>So ordered</u>.

---

[24] The defendants' appeals from the single justice's denial of their claims under <u>Brangan</u> are still pending before this court in other dockets.  See note 10, <u>supra</u>.